## HORTON v. THE STATE.

1. It is not, in a trial for murder, competent to prove that, years before the homicide, there had been a difficulty or quarrel between the accused and the deceased, without showing that in consequence thereof the former had continuously entertained hostile feelings towards the latter, or that the old grudge had something to do with the homicide;

and, as a rule, the connecting evidence should begin with the killing and travel backwards to the original difficulty.

2. That the accused in a criminal trial was allowed, without objection, to prove a portion of a conversation which had taken place between himself and another, not within the res gestæ, does not entitle him as a matter of right to introduce evidence of the entire conversation.

3. There being evidence warranting a conviction of voluntary manslaughter, there was no error in charging the jury upon this branch of the law of homicide.

4. If one violently and forcibly breaks into the dwelling-house of another and immediately assaults with a weapon an inmate thereof. the householder may, without more, regard the entry as burglarious, and may justifiably kill the assailant, if he does so in good faith and under the honest belief that it is necessary to prevent the accomplishment of the unlawful purpose for which the entry was apparently made. If, on the other hand, one so breaks and enters another's dwelling, and it is, after he does so, manifest that he does not meditate or intend violence or. the commission of any crime, it is not justifiable to kill him merely because of the unlawful entry of the house..

Argued March 19,—Decided April 4, 1900.

Indictment for murder. Before Judge Littlejohn. Sumter·superior court. January 24, 1900.

*Blalock & Cobb,* for plaintiff in error.
*F. A. Hooper, solicitor-general,* contra.

LEWIS, J. J. L. Horton was placed on trial in Sumter superior court, under an indictment charging him with the murder of Thomas Bivins, alleged to have been committed on June 24, 1899. The accused was convicted of the offense of voluntary manslaughter; whereupon he filed his motion for a new trial, and he excepts to the judgment of the court below overruling this motion.

1. One ground in the motion for a new trial is, that the court erred in admitting the evidence of a State's witness, over objection of defendant's counsel, in reference to a disturbance between defendant and deceased, some six or seven years previous to the homicide. There was no testimony introduced or offered that tended in any wise to connect this disturbance testified to by the witness with the difficulty that resulted in the killing of the deceased. For this reason we think the court erred in admitting the testimony. The rule of law controlling this question is announced in the case of *Pound* v. *State,* 43 *Ga.* 89 (3), where

it was held that "the admission of acts of previous quarrels, of particular acts, to be admissible against the prisoner, must not be a separate, distinct, and independent act, but there must be some link of association, something which draws together the preceding and subsequent acts, something which gives color of cause and effect to the transaction, and sheds light upon the motive of the parties, to render such particular act or acts admissible. " See also *Monroe* v. *State*, 5 *Ga.* 86 (3).

2. On the trial of the case counsel for the accused was allowed, without objection, to prove by Joseph Lee Horton, a son of the accused, a portion of a conversation had between them shortly after the homicide. It seems that after the killing the accused left his home and went to the house of his son, which was near, and reported to him, in substance, that he had killed the deceased. It was sought by defendant to introduce the entire conversation and statement of the accused to the son in regard to the killing. Upon objection of the State's counsel the court refused to admit such entire conversation. It seems that this conversation took place at a distance of about a half-mile from where the killing occurred, and about an hour or more thereafter. This statement of the accused certainly then constituted no part of the res gestæ. The State did not object to the accused proving by the witness that his father had reported to him the fact of the killing, but did object to his going further into the details of what occurred between them. The State, if it saw fit, upon cross-examination, had a right to bring out the remainder of the conversation, but certainly the details thereof could not be introduced by the accused in his own behalf.

3. Another ground in the motion for a new trial alleged error in the court charging the jury upon the subject of voluntary manslaughter, upon the ground that there was no evidence on which to predicate a charge upon this subject. The theory of the State seems to be that this killing occurred after the deceased had entered the house of defendant, and in a drunken stupor had fallen asleep upon the floor. There was no positive proof whatever to show that the killing occurred in this way. The State mainly relied upon facts and circumstances which, it was contended, showed that it was impossible for the fatal

shot to have been fired while the deceased was in a standing position, and that he must have been lying upon the floor of the room where he was killed at the time he received the fatal shot. In behalf of the defense the daughter of the accused, who was in the room where the killing took place, swore positively that the deceased was killed after forcibly entering the house against the protest of her parents; that he had an open knife in his hand, and after seizing her mother, with the knife drawn, accompanying it with a threat that he intended to kill them all, in this emergency her father shot and killed the deceased. It is contended by counsel for the accused that under this testimony there is no possible chance for him to have been guilty of voluntary manslaughter, but that it was either murder or justifiable homicide; and, as accused was convicted of voluntary manslaughter, the charge on that subject operated to his injury. After carefully going over the testimony, we do not find that it is of such a character as to compel the jury to accept one theory or the other. If they believed the only eye-witness to the killing, it was clearly a case of justifiable homicide. If they accepted, as shown beyond a reasonable doubt, the theory of the State, it was a clear case of murder. But there is evidence in the record from which the jury might have been authorized to discredit either theory. Testimony was introduced both by the prosecution and the defense to discredit the main witnesses on either side. It appears that, prior to the killing, the defendant and his son went in a buggy to a neighboring town, and on their return the deceased occupied a seat with them in the buggy, the testimony being conflicting as to whether deceased forced himself by getting into the buggy against the protest of defendant, or whether defendant invited him to ride. It seems that they were both drinking to some extent. There is considerable confusion in the testimony as to what occurred between them on this ride to defendant's home, but nothing to clearly indicate any decided malice or hatred of one to the other, or any purpose upon the part of either to commit a serious injury upon the other. After reaching the home of defendant, the deceased, accompanied by defendant's son, went to some neighboring houses. There was some testimony that he had been invited by defendant to spend

the night at his home, and one of the neighbors testified that, as deceased left his house, he said he was going to the home of defendant. From the statement of defendant it appears that he tried to get rid of deceased by going to bed early, anticipating that the latter might return to his house, and he did not wish to entertain him in a drunken condition. He did return to defendant's house after he, his wife, and daughter had retired, and there was proof in behalf of the defense that deceased made a forcible effort to break the door and enter against the protest of defendant and his wife. The door seems to have been latched on the inside, and a number of witnesses testified to this latch being found broken the next day. It seems from the testimony in behalf of defendant that he and his wife recognized, while the party was trying to force an entry into the house by breaking the door, that it was Bivins, and that they protested against it, and tried to get him to go home. We can not say, in the light of all the testimony in the record, that the jury might not have inferred that the forcible breaking and entering the house, and the conduct of the deceased after so entering, was not sufficient to justify the killing, but was sufficient to excite the passion of the defendant to such an extent as to reduce the killing from murder to manslaughter. In view of all the evidence, therefore, we can not say that the court committed error in giving in charge to the jury the law on the subject of voluntary manslaughter.

4. Error is alleged in the motion for a new trial on the following charges of the court to the jury: "Stabbing one with a knife, unless it be done in one's defense or under other circumstances justifying him in doing so, is a misdemeanor, unless such person intends to take the life of the person stabbed or attempted to be stabbed; then it would be a felony. Now if you believe from the evidence that the defendant in this case shot the deceased, that he intended to kill him, and that he shot him on account of and by reason of an actual assault made by the deceased upon the wife of the defendant or because there was an attempt by the deceased to commit a serious personal injury upon the wife of the defendant Horton, not amounting to a felony, or there were other equivalent circumstances to justify the

excitement of passion and to exclude all idea of deliberation, or malice, either express or implied, then, if death had ensued, the homicide would not have been murder, and the defendant would not be under such circumstances guilty of a higher offense than voluntary manslaughter. " Further, " If you should believe from the evidence that the deceased attempted to enter the dwelling of the defendant, and over the protestations or objections of the defendant, or the wife of the defendant, he broke or forced open the door, and if you should further believe from the evidence that while making said forcible entry he was shot and killed by the defendant, the defendant would be justifiable, and he would not be guilty of any offense under such circumstances; but, if you should believe from the evidence that the deceased, over the objections and protestations of the defendant or his wife, broke or forced an entrance through the door into the dwelling of the defendant, yet if you should believe from the evidence that he was not shot or killed while making such entrance, and you should further believe from the evidence that after he had so broken and entered and there was a light made, and the identity of such person was ascertained, the fact of previously breaking and unlawfully entering, without more, would not of itself justify the defendant in taking the life of such person." We do not think the charges complained of are adapted to the facts in this case. The theory of the defense was a burglarious breaking and entering by the deceased into the dwelling of the defendant over the latter's protest and remonstrances, and, after thus securing his entrance, he was discovered, by the light that had been made in the room, with an open knife drawn, threatening to take. the lives of the inmates of the house; that with this knife raised in a' striking posture in one hand, he advanced upon the wife of defendant, seized her with the other hand, and was in the act of striking, when she appealed to her husband for protection, who took his gun, and with it killed the assailant. If one violently and forcibly breaks into the dwelling-house of another, and immediately assails with a weapon an inmate thereof, the householder has a right to regard the entry as burglarious, and may justifiably kill the assailant; provided he does so in good faith, and under the honest belief that

it was necessary to prevent the accomplishment of the unlawful purpose for which the entry was apparently made. The court, in the charge excepted to, defined stabbing to be a misdemeanor, and then instructed the jury, in effect, that if the deceased had not been killed to prevent his forcible entry of the house, but had been killed after entering while making an assault with a knife on the wife of the defendant, which assault would amount only to an attempt to stab, he would still be guilty of voluntary manslaughter. Section 70 of the Penal Code declares that it is justifiable homicide to kill a person, in defense of one's habitation, property, or person, who manifestly intends or endeavors, by violence or surprise, to commit a felony on either; or any persons who manifestly intend and endeavor, in a riotous and tumultuous manner, to enter the habitation of another for the purpose of assaulting or offering personal violence to any person dwelling or being therein. If the theory of the defense was correct in this case, the defendant would have been as much justified in killing the deceased, after forcibly and violently entering his room threatening murder, and prepared with a weapon likely to produce such result, as he would have been to have killed him in order to prevent an entry for such a purpose. We think, if he is satisfied from the manner and demeanor of the assailant that he intends to commit a serious personal injury on the members of his household, after violently breaking and entering the habitation, that he would be justified in killing him, if necessary to prevent such an injury; and he is under no legal obligation to deliberate before the killing with the view of determining at his peril whether the injury contemplated meant simply stabbing with a knife or killing. We think section 72 of the Penal Code is directly applicable to this case. It is there declared: "If after persuasion, remonstrance, or other gentle measures used, a forcible attack and invasion on the property or habitation of another can not be prevented, it shall be justifiable homicide to kill the person so forcibly attacking and invading the property or habitation of another; but it must appear that such killing was absolutely necessary to prevent such attack and invasion, and that a serious injury was intended, or might accrue to the person, property, or family of the person killing."

In the case of *Pound* v. *State,* 43 *Ga.* 135-6, Chief Justice
Lochrane declares that this provision of the law (Code of 1868,
§ 4266) " applies to cases where remonstrances or gentle means
fail to prevent a forcible attack on the habitation or property of.
another, and that it was absolutely necessary, to prevent such at-
tack and invasion or serious injury to the person, property, or
family, to kill the assailant. The whole section contemplates an
attack upon the property or habitation of another, or to his per-
son or his family, by an invasion of his rights of property, in the
defense of which, after remonstrance, he may repel the force."
He draws the distinction between that section and section 4264,
which is section 70 of the present Penal Code, in this: that the
latter gives permission to kill one who manifestly intends or en-
deavors, by violence or surprise, to commit a felony on either
habitation, property, or person; and says that the law justifies
killing in such a case without question, remonstrance, or other
act. He says that the other section classes another line of de-
fense, and that such forcible attack may not comprehend felony,
but serious injury. We think, under the spirit of the law,
that where a forcible attack is made upon the habitation of a
person at night, and is persisted in after persuasion and re-
monstrance on the part of the owner, who has ordinarily a right
to conclude that such assault is made with intent to commit a
serious injury either to his person, or property or family within
the habitation, he can kill to prevent an entrance for the purpose
of committing such injury. Now if he fail to kill before the
person enters, and yet, after the entry is forced, an assault is ac-
tually made immediately upon a member of the slayer's family
in such manner as to indicate an attempt, to say the least of it,
to commit serious personal injury, a killing of the intruder un-
der such circumstances would be justifiable homicide. It has
been questioned by this court in the case of *Crawford* v. *State,*
90 *Ga.* 702, whether the construction placed upon that section
in the opinion of Chief Justice Lochrane above cited was cor-
rect " as to property contemplated being only such as is at or
near the habitation "; but we do not think that it was the in-
tention of that decision, nor of the opinion of the present Chief
Justice therein, to announce anything in conflict with the views

herein entertained, namely, that an unlawful and forcible invasion of one's habitation, against his protest and remonstrance, would justify a killing of the intruder after entering, if necessary to prevent him from seriously injuring any member of the household. This is entirely in accord with the able opinion of Justice Little in the case of *Smith* v. *State,* 106 *Ga.* 682-3, where he declares that "he who seeks in a violent manner to enter that habitation, and will not heed the remonstrance or persuasion of the owner, but continues the attack and invasion, intending to do a serious injury either to the person who resides there, to his house, or to some member of the family, forfeits his life, and he who in good faith, under such circumstances, takes the life of the person so invading his home, is guiltless of crime, and is acting in the due protection of himself and family."

On the other hand, although one should violently and forcibly break and enter into another's dwelling, if after he does so it becomes manifest that he does not meditate or intend violence or the commission of any crime, it is not justifiable to kill him simply because of the unlawful entry of the house. In one portion of the charge complained of the court used the expression, "If you further believe from the evidence that after he had so broken and entered and there was a light made, and the identity of such person was ascertained, the fact of previously breaking and unlawfully entering, without more, would not of itself justify the defendant in taking the life of such person." We think the allusion to the person being identified after entering was calculated to mislead the jury. It is true, as above indicated, that if the person after entering manifestly intended to perpetrate no crime upon person or property, the inmate of the house would not be justified in killing him; but if he manifestly intended to commit such violence upon person or property, as contemplated by the law to be a justification for a homicide, his recognition of the assailant before the killing would, of course, not render the homicide criminal. The court should certainly have added to the charge above, that if it became necessary for the defendant to kill the deceased after he had forcibly and against remonstrance entered the house, in order

to prevent him from committing a serious personal injury upon any member of the defendant's family, the killing was justifiable. We therefore conclude that the charges of the court above set forth were not fairly adjusted to the issues involved, under the evidence and statement of the accused. The judgment refusing a new trial is reversed, in order that the case may be tried in accordance with the rulings herein announced.

*Judgment reversed. All the Justices concurring.*