41253. RICH v. THE STATE.
(325 SE2d 761)

BELL, Justice.

Rich was convicted of the murder of Leonard Clonts, and received a life sentence.[1] Rich's appointed counsel has filed a request for permission to withdraw from the case pursuant to *Anders v. California,* 386 U. S. 738 (87 SC 1396, 18 LE2d 493) (1967).[2]

Rich and the victim had known each other for about forty years before the homicide. A witness who had known both of them for several years described them as "drinking buddies," and testified that Rich had previously expressed to him the desire to kill Clonts if given

---

[1] The crime was committed on October 2, 1983. The Union County jury returned its verdict of guilty on March 26, 1984. The transcript of evidence was filed on May 30, 1984. Notice of appeal was filed on April 5, 1984. The record was docketed in this court on June 14, 1984. It was submitted for decision without oral argument on July 27, 1984.

[2] In *Huguley v. State,* 253 Ga. 709 (324 SE2d 729) (1985), we held that *Anders* motions would no longer be entertained by this court. However, since the instant case was docketed in this court on June 14, 1984, and since the parties have proceeded under the guidelines of *Anders v. California,* supra, we will not apply the rule of *Huguley,* but will instead entertain the *Anders* motion filed by Rich's counsel. See *O'Neal v. State,* 254 Ga. 1 (325 SE2d 759) (1985).

the chance.

Clonts was shot in Rich's yard. Rich testified that Clonts was visiting with him the day he was shot, and had spent the previous night with him. Rich said that while he was inside his house, he overheard an argument outside, and then a shot. He went outside to investigate, and discovered Clonts lying in the yard. Rich testified that he then went to call an ambulance, and was first picked up by neighbors Jackie Burrell, James Meshner, and Dewayne Meshner. He said that they took him to a store near Murphy, North Carolina, where he called an ambulance. After they dropped him back at his house, he saw Jenny Little, another neighbor, who also took him to call an ambulance. Rich admitted that he fired his shotgun on the day of the shooting, but said he fired it at a dog stealing a chicken.

Jackie Burrell, the Meshners, and Jenny Little all contradicted Rich's version of events. Burrell and the two Meshners testified that when they picked up Rich he was intoxicated, and was carrying a shotgun that had tape wrapped around the stock. He told them that he had shot Leonard Clonts. They testified that they drove Rich to a local store because he told them he wanted to call an ambulance, and then drove him home. They did not wait for the ambulance or the police to arrive because they had been drinking, and did not want to get into trouble.

Jenny Little testified that while she was driving home she saw Rich walking on the side of the road, and stopped and picked him up. She said that Rich asked her to take him some place to call an ambulance. When she inquired why he needed an ambulance, Rich told her that he and Clonts had argued and fought; that he shot Clonts when Clonts came after him with an axe; and that Clonts was at that time lying in his yard. Little testified that she took Rich to her sister's house, located about one mile from where she picked up Rich, and about 30 minutes later returned to Rich's house, where they found many people milling around.

Clonts' body was found lying approximately 47 feet from Rich's house and 59 feet from a spent 16 gauge shotgun shell. A 16 gauge shotgun with tape wrapped around the stock was also found in Rich's pick-up truck. The autopsist testified that Clonts died as the result of a shotgun wound to the abdomen and chest. Forensic evidence established that the spent casing found at the crime scene was fired from Rich's gun, and that Clonts was shot from a distance of about 35 feet.

Evidence of a prior homicide involving Rich was admitted into evidence by the trial court. That incident occurred in 1972, and involved another of Rich's "drinking buddies," Oscar McClure, who lived with Rich. On the day of that shooting, Union County Sheriff Harlan Duncan saw Rich walking on the side of the road near Rich's house carrying a .22 caliber rifle with blood splattered on him.

Duncan stopped and picked up Rich, and Rich told him that McClure had been shot, and that he was going for help. Duncan found McClure in Rich's home with a gunshot wound in the back of his head. Duncan testified that Rich had been drinking heavily. Rich was tried for murder, and acquitted.

1. The only arguable ground for appeal raised by Rich's counsel is that the trial court erred in admitting evidence of the 1972 homicide. We find no merit to this argument.

Evidence of other criminal acts of the defendant may be admitted if it " 'is substantially relevant for some other purpose than to show a probability that (the defendant) committed the crime on trial because he is a man of criminal character . . . .' " *Walraven v. State*, 250 Ga. 401, 407 (297 SE2d 278) (1982) (quoting McCormick on Evidence, § 190 at 447, 2d ed., 1972). Accord *Williams v. State*, 251 Ga. 749, 755 (4) (312 SE2d 40) (1983). Purposes for which other crimes evidence may be offered include motive, intent, bent of mind, course of conduct, absence of mistake or accident (both are aspects of intent), plan or scheme, and identity. *Williams v. State*, supra, 251 Ga. at 755; *Hamilton v. State*, 239 Ga. 72, 75 (235 SE2d 515) (1977). "To render evidence of extrinsic offenses admissible for any of these purposes, the state must show that the defendant was the perpetrator of the extrinsic offenses, and that there is a sufficient similarity or connection between the extrinsic offense and the offense charged, such that proof of the former tends to prove the latter." *Williams v. State*, supra, 251 Ga. at 755.

In the instant case, Sheriff Duncan's testimony sufficiently proved that Rich was the perpetrator of the extrinsic offense. See *Kilgore v. State*, 251 Ga. 291 (3) (b) (305 SE2d 82) (1983); *Williams v. State*, supra, 251 Ga. at 784. The second factor for the admission of extrinsic offense evidence was also satisfied. Both crimes involved "drinking buddies" of Rich who were killed at his residence with a firearm. There was evidence that Rich had been drinking heavily at the time of both incidents, and that, after both incidents, Rich walked from the scene and told people who stopped to assist him that he was going for medical assistance for the victims. These similarities render evidence of the extrinsic offense admissible as relevant to Rich's course of conduct relating to the shooting of his "drinking buddy" Leonard Clonts and thus to Rich's identity as the perpetrator of that crime.

Although not raised by Rich's counsel, two other factors relating to the admission of the extrinsic offense evidence merit our attention.

One important consideration is whether Rich's acquittal on the 1972 murder charge renders evidence of that offense inadmissible. See *Felker v. State*, 252 Ga. 351 (1) (b) (314 SE2d 621) (1984). We need not, however, address the merits of this issue, as Rich failed to prop-

14

erly preserve this objection for appeal. Rich's counsel initially filed a motion in limine seeking to preclude the introduction of any evidence concerning the 1972 offense. One of the grounds for that motion was that Rich had been acquitted of that offense. The trial court declined to rule on the motion before trial, but instead instructed the parties that the admissibility of the 1972 offense would be decided during the course of the trial outside of the presence of the jury, and that no one was to mention that evidence before its admissibility was determined.[3] When the matter was taken up during trial, Rich failed to object to the admissibility of the 1972 offense on the ground that he had been acquitted of that offense. Rich's failure to call that objection to the attention of the trial court at that time amounts to a waiver of the objection, and precludes his ability to raise it on appeal. *Ingram v. State*, 253 Ga. 622 (4) (323 SE2d 801) (1984); *Yarbrough v. State*, 151 Ga. App. 474 (2) (260 SE2d 369) (1979); *American Chemical Co. v. Rhodes*, 139 Ga. 495 (8) (77 SE 582) (1913); *Mullis v. State*, 197 Ga. 550 (2) (30 SE2d 99) (1944).

Another consideration is whether the lapse of eleven years between the two incidents renders evidence of the 1972 offense inadmissible. We find that it does not. See *Campbell v. State*, 234 Ga. 130, 132 (214 SE2d 656) (1975).

2. Although Rich does not challenge the sufficiency of the evidence, we find that, viewing the evidence in a light most favorable to the jury's verdict, any rational trier of fact could have found Rich guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

As required by *Anders v. California*, supra, we have carefully reviewed the entire record in this case. We conclude that there are no meritorious grounds for an appeal, and that an appeal would be frivolous. Defense counsel has timely served Rich with both his motion to withdraw and his *Anders* brief outlining possible errors for appeal. We thus find that the requirements of *Anders v. California*, supra, have been met, and grant Rich's counsel permission to withdraw from the case. *Parker v. State*, 252 Ga. 124 (312 SE2d 314) (1984).

*Motion granted; appeal dismissed. All the Justices concur.*

DECIDED FEBRUARY 20, 1985.

*Woodside & Boemanns, R. John Boemanns*, for appellant.
*V. D. Stockton, District Attorney, Michael J. Bowers, Attorney*

---

[3] See *State v. Johnston*, 249 Ga. 413 (3) (291 SE2d 543) (1982), concerning the trial court's discretion, pursuant to a motion in limine, to make its decision as to the admissibility of evidence either before or during trial.

*General, Dennis R. Dunn,* for appellee.