S91A1468. MAXWELL v. THE STATE.
(414 SE2d 470)

FLETCHER, Justice.

Sidney Dean Maxwell was convicted of murdering his wife, Gina Maxwell. He appeals and we reverse.[1]

Appellant's wife spent the morning and early afternoon of August 11, 1990 working in the yard of her home with appellant, their three children, and appellant's mother and step-father. Appellant's wife left her home about 2:30 p.m. to go to the Moody Air Force Base where she worked in housekeeping. Appellant called his wife at the base about 9:30 p.m. and spoke with her briefly.

Appellant testified that when he awoke the next morning, he discovered that his wife had not come home from work the night before. Appellant called his parents and then the police with whom he placed a missing person's report. While appellant stayed at home with the baby, his parents drove to the base to see if they could find Gina Maxwell. Although they did not find her, they did find her car in the parking lot of a shopping center where a fast food restaurant and a bar were located. It was discovered that she had signed out at work the night before at 11:00 p.m. and, later in the day, her pocketbook and wallet were found in a dumpster located in the parking lot where her car had been found.

On August 17, 1990, Gina Maxwell's fully clothed body was found in a wooded area to the east of the shopping center where her car and pocketbook had been found. An autopsy was performed, however, the

---

[1] The alleged crime occurred sometime between August 12, 1990 and August 17, 1990. Appellant was indicted on October 8, 1990. The jury returned its verdict of guilty on May 2, 1991 and appellant was sentenced to life imprisonment that same day. A notice of appeal to this court was filed on May 6, 1991 and the case was orally argued before this court on October 16, 1991.

body and skeletal system showed no sign of fractures or trauma. While an analysis of body tissue and fluid revealed the presence of .06 grams of ethyl alcohol, the medical examiner who performed the autopsy on Gina Maxwell was not able to determine when, where, or how the death occurred.

1. Considering all of the evidence admitted by the trial court, even that evidence which was erroneously admitted, we conclude that a rational trier of fact could have found Maxwell guilty of the crimes charged beyond a reasonable doubt. *Lockhart v. Nelson*, 488 U. S. 33 (109 SC 285, 102 LE2d 265) (1988).

2. Appellant contends that the trial court erred by permitting the state to introduce evidence concerning three prior incidents involving appellant and his wife: one in 1987, one in 1988, and a third in 1990. We agree.

(a) Uniform Superior Court Rule 31.1 requires the state to provide defendant with notice of its intent to present evidence of similar transactions or occurrences, including evidence of prior difficulties between defendant and the victim, at least ten days before trial, unless the trial court lengthens or shortens the notice time. *Loggins v. State*, 260 Ga. 1, 2 (388 SE2d 675) (1990). Here, no such notice was provided and its absence was error.

The state contends that the appellant had actual notice of its intent to present such evidence because appellant had been in possession of the state's file, all 780 pages of it, since January of 1990 and the statement of the witness that testified as to the 1987 and 1988 incidents was a part of that file as was the statement of the witness that testified as to the 1990 incident. A copy of the state's entire file was given to appellant in response to the trial court's order to turn over "everything that [the state] had in its file concerning evidence which might be relevant or even irrelevant, exculpatory and inculpatory in connection with this investigation and the case."

As we recognized in *Loggins*, supra, Superior Court Rule 31 recognizes the difficulty of rebutting evidence of specific acts unless timely notice of the state's intention to offer evidence of those acts is given. Section 3 (B) of Rule 31 requires that the notice be in a specific form to ensure that the state actually notifies the defendant of its intent to use certain evidence so that the defendant will have a meaningful opportunity to rebut that evidence. Burying the defendant with paper by providing him with a copy of its entire case file does not accomplish the state's duty of notifying the defendant of the specific acts it intends to present evidence of to the jury.

(b) As we once again acknowledged in *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991), because the general character of an accused is inadmissible unless the accused chooses to put his character in issue, we prohibit the admission of evidence of distinct, indepen-

dent, and separate offenses or acts where there is no logical connection between the crime charged and those independent offenses or acts. Prohibition of such evidence helps to ensure that an accused is tried for the offense for which he was indicted rather than for other acts which may have occurred in the past.

Evidence of prior difficulties between an accused and a victim is a type of character evidence which "should be received with care and should not be admitted at all if there is no probative connection with the present case. . . ." *Cooper v. State*, 256 Ga. 234, 235 (347 SE2d 553) (1986). For there to be a probative connection between the prior difficulties and the present case, there must be:

> some link of association, something which draws together the preceding and subsequent acts, something which gives color of cause and effect to the transaction, and sheds light upon the motive of the parties. . . .

*Pound v. State*, 43 Ga. 88, 89 (1871). See also *Horton v. State*, 110 Ga. 739, 740-741 (35 SE 659) (1900). Where there are *recent* quarrels or difficulties between the accused and the victim *which continue up until the time of the victim's death*, those prior quarrels or difficulties may shed some light upon the motive for the homicide and may, therefore, be admissible. *Gunter v. State*, 243 Ga. 651, 656 (256 SE2d 341) (1979).

Before evidence of prior difficulties or quarrels can be presented to a jury, the trial court must conduct a hearing pursuant to Uniform Superior Court Rule 31.3 (B) just as it must do with respect to independent offenses or acts. Accord *Williams v. State*, supra. At that hearing, for each prior difficulty or quarrel the state seeks to introduce, the state must make the three affirmative showings we outlined in *Williams*, 261 Ga. at 641-643, and the trial court must then make a determination, as to each prior difficulty or quarrel, that these three showings have been satisfactorily made before the state may present any evidence of that difficulty or quarrel to the jury.[2]

3. Appellant argues that the trial court erred by allowing the state to introduce evidence of two conversations appellant purportedly had with third parties prior to the death of his wife. One conversation about which appellant complains occurred over a year before his wife's death. A witness was allowed to testify, over objection, that appellant said that if he were going to kill someone, he would do so by weighting the body and throwing it into a pond. The conversation did not concern appellant's wife. Her body was not found near a pond or any other body of water and there was no evidence that she had

---

[2] This determination by the trial court must be made a part of the record.

drowned or that her body had been weighted.

The second conversation about which appellant complains is alleged to have occurred in June of 1990. A witness was allowed to testify, over objection, that appellant had told her of a way to kill someone that involved a wire, a light bulb and one other item that the witness could not remember. The conversation did not concern appellant's wife. There was no evidence to indicate that any of these items were involved in her death.

Both of these conversations were irrelevant and highly prejudicial. They did nothing more than bring appellant's character into evidence and both should have been excluded pursuant to OCGA § 24-2-1.

4. Appellant contends that the trial court erred by refusing to grant a mistrial after a witness testified that appellant had said something to the effect that if his father-in-law did not get off his back, appellant would blow out his father-in-law's brains. The state informed the trial court that it was as surprised by the statement as the appellant was and showed the trial court the witness' prior out-of-court statement which included no such reference.

Clearly, the statement was irrelevant and prejudicial. However, the trial court recognized this by instructing the jury to disregard the statement. Choosing to give such a limiting instruction rather than declaring a mistrial was within the sound discretion of the trial court. Should the state choose to retry this case, we are confident that it will take steps to ensure that the witness involved will not be allowed to make the same mistake again.

5. Appellant also contends that the trial court erred by permitting the medical examiner who performed the autopsy to testify that, in his opinion, the manner of death, as opposed to the cause of death, was due to homicide. We agree.

The medical examiner, qualified as an expert in forensic pathology, specifically testified that he could not determine a cause of death based upon his examination of the body, including the autopsy. He also specifically testified that his opinion that the manner of death was due to homicide was based entirely upon the circumstances surrounding Gina Maxwell's demise as related to him by a detective working on the case. In fact, the medical examiner admitted that his opinion as to the manner of death "[was] based on things the jury could determine themselves."

Because the jury is the trier of fact, witnesses are generally not allowed to express their opinion as to ultimate issues involved in the case, as this is the province of the jury. We have allowed an exception to this general rule for opinions or conclusions, even as to ultimate issues, where "the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is

beyond the ken of the average layman." *Smith v. State*, 247 Ga. 612, 619 (277 SE2d 678) (1981).

However, it remains clear that:

> "where it is possible for [the jurors] to take the same elements and constituent factors which guide the expert to his conclusions and from them alone make an equally intelligent judgment of their own, independently of the opinion of others, then undoubtedly this should be done."

*Fordham v. State*, 254 Ga. 59 (325 SE2d 755) (1985), quoting from *Metropolitan Life Ins. Co. v. Saul*, 189 Ga. 1, 9 (5 SE2d 214) (1939).

It is only where:

> "the nature of the question is such that the factors leading to a conclusion are not known to the common or average man, but are among those things shrouded in the mystery of professional skill or knowledge, . . ."

id. at 59, 60, that the opinion or conclusion of an expert should be deferred to as to an ultimate issue.

Here, the factors which led the medical examiner to his conclusion that Gina Maxwell's death was a homicide are factors well within the knowledge and understanding of the jury. The medical examiner should not have been permitted to testify as to his conclusion or opinion of the manner of death where his investigation did not lead to that conclusion and where his expertise as a forensic pathologist was not needed or used in reaching that conclusion.

Based upon our holdings in Divisions 2, 3 and 5, appellant's conviction is reversed.

*Judgment reversed. All the Justices concur, except Hunt and Benham, JJ., who dissent.*

DECIDED MARCH 19, 1992.

*Samuel F. Greneker, James G. Tunison, Jr.*, for appellant.

*H. Lamar Cole, District Attorney, J. David Miller, Assistant District Attorney, Michael J. Bowers, Attorney General, Peggy R. Katz, Staff Attorney*, for appellee.