S95A1336. SIMMONS v. THE STATE.
(466 SE2d 205)

HINES, Justice.

Clarence Mickey Simmons was convicted of the malice murder of his ex-wife, Sara Simmons, and was sentenced to life imprisonment.* We affirm.

After 11 years of marriage, Simmons and Sara divorced in September 1992. Their only child, nine-year-old Cassandra, resided with Simmons. Simmons testified that when he and Cassandra returned home from a turkey shoot in the early morning of October 3, 1992, an argument and struggle ensued between himself and Sara, who was visiting. During the confrontation, Sara was fatally shot in the abdomen with a .38 caliber pistol.

The county coroner, who examined the body at the crime scene, testified that he overheard Simmons telling his family members that Sara shot herself. The coroner further testified that the location of the entry wound and the absence of gunpowder residue were inconsistent with a suicide. In a statement to police, Simmons indicated that

---

[1] 28 USC § 1738A.
[2] Wilson v. Gouse, 263 Ga. 887, 889-890 (441 SE2d 57) (1994).
[3] Dyer v. Surratt, 216 Ga. App. 876 (456 SE2d 510) (1995).

* The crime occurred on October 3, 1992, and Simmons was arrested that day. He was indicted on November 2, 1992, and entered a plea of not guilty on November 23, 1992. A guilty verdict was returned on April 16, 1994, and Simmons was sentenced the same day. A motion for new trial was filed on April 21, 1994, amended on September 16, 1994, and denied on January 13, 1995. The notice of appeal was filed on January 18, 1995. The case was docketed in this Court on May 16, 1995, and was argued on September 11, 1995.

the pistol discharged while Sara was waving it around in her right hand. Based on the absence of gunpowder particles on Sara's clothing, a firearms examiner from the state crime laboratory opined that, when the pistol was fired, its muzzle was at least 30 inches away from Sara's abdomen. The firearms examiner also testified that, because the chamber behind the firing pin did not contain a spent cartridge, he believed the pistol had been tampered with after it was fired. A pathologist from the state crime laboratory testified that bruises to Sara's scalp, forehead, and arm, occurred no more than six hours before her death. He also testified that a bruise on the right side of her forehead was consistent with a blow from a hand or fist. Witnesses for the State testified to Simmons' prior acts of violence against Sara.

1. Reviewed in a light most favorable to the verdict, the evidence presented at trial was sufficient to enable a rational trier of fact to find Simmons guilty beyond a reasonable doubt of the crime charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Simmons contends that evidence of prior difficulties between himself and Sara was improperly admitted.

(a) "Before evidence of prior difficulties or quarrels can be presented to a jury, the trial court must conduct a hearing pursuant to Uniform Superior Court Rule 31.3 (B) just as it must do with respect to independent offenses or acts." *Maxwell v. State*, 262 Ga. 73, 75 (414 SE2d 470) (1992). Respecting each prior difficulty or quarrel it seeks to introduce, the State must establish:

> that (1) there is sufficient evidence that the prior difficulty occurred; (2) that the evidence is offered for an appropriate purpose; and (3) that there is a sufficient probative connection between the crime charged and the prior difficulty to justify admission of the prior difficulty into evidence.

*Stewart v. State*, 263 Ga. 843, 844-845 (440 SE2d 452) (1994). See also *Maxwell*, supra at 75, and *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991). The trial court then determines admissibility "as to each prior difficulty or quarrel." *Maxwell* at 75.

The State served Simmons with notice of its intention to introduce evidence of eight instances of prior difficulties and similar transactions. The trial court conducted a hearing pursuant to Uniform Superior Court Rule 31.3 (B), and issued a written order denying Simmons' motion to exclude the evidence. Although it did not articulate specific findings regarding each individual prior difficulty sought to be introduced, the trial court enunciated comprehensive findings of fact and conclusions of law sufficient to indicate that the State had carried its burden regarding seven of the eight prior instances. Com-

pare *Morales v. State*, 210 Ga. App. 414 (2) (a) (436 SE2d 528) (1993) (trial court's failure to make determination on the record regarding the three-part test was not harmful error where "evidence presented by the State . . . was sufficient for the trial court to have concluded . . . that each of the requirements of [the test] had been satisfied"). Since evidence of the eighth incident, which involved another former wife, was not introduced at trial, there was no harm in the trial court's failure to articulate whether or not the State satisfied the three-part test regarding that event.

(b) Simmons maintains that the prior difficulties were inadmissible because they were remote and dissimilar to the murder. He complains of the admission of testimony concerning incidents not involving a gun, and incidents which occurred 11 years prior to the murder.

A lapse of 11 years between a prior difficulty and the crime charged does not necessarily render the evidence inadmissible as a matter of law. See *Rich v. State*, 254 Ga. 11, 14 (1) (325 SE2d 761) (1985); *Starnes v. State*, 205 Ga. App. 882, 883 (424 SE2d 4) (1992). Moreover, whereas the evidence indicated difficulties throughout the eleven-year marriage, and that Simmons and Sara had been divorced for only one month at the time of the murder, " '[t]he lapse of time between the prior occurrences and the offenses charged goes to the weight and credibility of such testimony, not its admissibility. [Cits.]' [Cit.]" *Starnes*, supra at 883.

Regarding Simmons' claim that the prior difficulties introduced at trial were inadmissible because they did not involve the use of a deadly weapon:

> the true test of admissibility is not the number of similarities between the crimes, but whether the evidence of prior incidents was substantially relevant for some purpose other than to show that the defendant likely committed the crime because he is a person of bad character.

*Bohannon v. State*, 208 Ga. App. 576, 580 (431 SE2d 149) (1993). The testimony admitted concerning instances of prior difficulties throughout Simmons' marriage, "was relevant to the issues of intent, motive, scheme, [and] bent of mind. . . ." Id. at 580. Accordingly, the absence of a deadly weapon did not render the testimony inadmissible.

(c) Simmons also contends that testimony concerning a prior difficulty which occurred in 1981 or 1982 was improperly admitted because it was not referenced in the State's notice of intent, nor was it approved by the court prior to trial. Since this testimony came in response to Simmons' own inquiry, he cannot now complain that its introduction is grounds for reversal. *Sullens v. State*, 239 Ga. 766 (2) (238 SE2d 864) (1977).

Additionally, Simmons argues that the State failed to confine evidence of prior difficulties to those instances approved by the court, and instead introduced testimony regarding Simmons' bad character. The record establishes that Simmons objected only once on the ground that testimony exceeded the bounds approved in the court's order. On redirect, the State asked Sara's sister whether she would "term their relationship as [Simmons] dominating and controlling [Sara]." She responded in the affirmative, and Simmons objected. After the State agreed to abandon that line of questioning, Simmons acknowledged his approval and the trial resumed. Simmons made no motion to strike, nor requested that the jury be given curative instruction. Under these circumstances, in which Simmons acquiesced in the court taking no further action, he waived any objection. See *Robinson v. State*, 173 Ga. App. 260 (3) (325 SE2d 882) (1985); *Nolton v. State*, 196 Ga. App. 690 (2) (396 SE2d 605) (1990).

3. Simmons contends that the trial court erred by admitting a statement he made to police the morning of the murder. He maintains that the statement was involuntary because he was under the influence of alcohol and suffering from extreme emotional distress. Evidence at the *Jackson-Denno* hearing indicated that after Simmons was given an intoximeter test and registered a .04 blood-alcohol level, he was read his rights pursuant to *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), signed a waiver of those rights, and made a statement to police. After police read the statement back to him, Simmons indicated it was correct and signed it. The trial court determined that the statement was voluntary within the meaning of *Miranda*, supra. Moreover, at trial, Simmons testified that he was not drunk when he made the statement. "Unless the factual and credibility findings of the trial court are 'clearly erroneous,' the trial court's decision on admissibility will be upheld on appeal. [Cit.]" *Fowler v. State*, 246 Ga. 256, 258 (3) (271 SE2d 168) (1980). We find no error.

4. Simmons argues that the trial court erred in excluding testimony of a social worker which would have shown that witnesses for the State, Sara's family, the Swindlers, were biased against Simmons' mother and family. At trial, Simmons proffered the testimony and written report of an employee of the Department of Family and Children Services who conducted a home evaluation of Sara's parents in connection with the placement of Cassandra. The report stated that Sara's parents were "preoccupied with their daughter's murder case," and "appear[ed] to have negative biases against Mrs. Simmons and . . . [Simmons'] family." Simmons sought to introduce the testimony and report for the purpose of establishing Sara's family's bias against the Simmons family.

Before a witness may be impeached for bias or hostility toward a party, the proper foundation must be laid by cross-examining the wit-

ness regarding his ill-feelings toward that party. *Schamroth v. State*, 84 Ga. App. 580, 585 (66 SE2d 413) (1951). See generally D. Lake Rumsey, Jr., Agnor's Georgia Evidence, § 5-6 at 74 (3rd ed. 1993); Thomas F. Green, Jr., Georgia Law of Evidence, § 137 at 285-286 (4th ed. 1994).

> The general rule is that a witness may be interrogated as to the state of his or her feelings toward one of the parties. If the witness denies having ill feelings, further examination may be conducted for purposes of impeachment by proving that ill feelings do in fact exist.

*Schamroth*, supra at 585. Likewise, "[b]efore a witness may be impeached by calling *other witnesses* to prove acts or declarations showing partiality," a similar foundation must first be laid by cross-examining the witness sought to be impeached as to his feelings toward the party. 1 John W. Strong et al., McCormick on Evidence, § 39 at 134-135 (4th ed. 1992). But cf. *Lundy v. State*, 144 Ga. 833 (88 SE 209) (1916) (third-party testimony *establishing the relationship between a witness and the defendant* not objectionable where foundation for the witness's impeachment not laid).

The fact that the family of a murder victim would harbor ill-will or bias against the defendant is not unexpected. The jury was well aware of the Swindlers' familial relationship to the victim. Although Sara's father testified that he got along well with Simmons before the murder, he was not questioned regarding any bias against Simmons or his mother. Nor did he deny the existence of a "bitter custody action" with Simmons' mother when questioned by Simmons on cross-examination. The trial court offered to permit Simmons further cross-examination of the Swindler family regarding any possible bias, but Simmons failed to do so. Accordingly, because Simmons failed to establish a proper foundation for impeaching members of the Swindler family for bias, the trial court did not err in excluding the testimony of the social worker. Moreover, Simmons failed to establish that the Swindlers' statements, as reported by the social worker, were admissible under any recognized exception to the rule against hearsay. See OCGA § 24-3-1 (b).

5. Simmons also contends that the trial court erred by refusing to admit testimony from a school counselor concerning specific acts of abuse allegedly suffered by Cassandra at the hands of Sara. Simmons argued at trial that this testimony should be admissible for the purposes of explaining evidence of prior difficulties introduced by the State and impeaching the testimony of Cassandra, his own witness. However, the proffered testimony established no nexus between Sara's alleged acts of violence toward Cassandra and the specific inci-

dents of prior difficulties between Simmons and Sara introduced by the State. Furthermore, since Cassandra was never even questioned about the alleged acts of violence, the court did not err in refusing to admit the testimony of the counselor for the purpose of impeachment. See OCGA § 24-9-81. Moreover, evidence of violent acts by the victim, against third persons, is admissible only when the defendant claims justification as a defense and provides advance notice of his intent to introduce such evidence. *Chandler v. State*, 261 Ga. 402, 407-408 (405 SE2d 669) (1991). The record does not indicate that Simmons provided the State or the trial court with proper notice.

6. Simmons further contends that the trial court erred by allowing procedural and substantive improprieties during the State's closing argument.

(a) Simmons maintains that the trial court erred by allowing two attorneys for the State to make closing arguments, thus violating OCGA § 17-8-70.[2] However, Simmons failed to object at trial. Moreover, Simmons has failed to establish how he was harmed. *Wells v. State*, 177 Ga. App. 419 (2) (339 SE2d 392) (1986).

(b) Simmons next argues that portions of the State's closing argument were inflammatory, prejudicial, and improperly injected personal opinions as to his character and credibility, and the credibility of his witnesses. Simmons again failed to object to any of the alleged improper argument at trial. "The time to object to improper closing argument is when the impropriety occurs at trial, when the trial judge may take remedial action to cure any possible error." *Todd v. State*, 261 Ga. 766, 767 (410 SE2d 725) (1991). Moreover, this Court has long held that the permissible range of argument during final summation is "very wide." *Conner v. State*, 251 Ga. 113, 122 (303 SE2d 266) (1983), quoting *Mitchum v. State*, 11 Ga. 615, 631 (1852). Each party has the right to argue all reasonable inferences drawn from the evidence presented at trial. *Todd*, supra at 768. We find that the State's unflattering characterizations of Simmons, that he is a liar, that he cried false tears at trial, that he is mean, and that he is a wife-beater, were permissible inferences drawn from the evidence presented. Comments respecting the veracity of Simmons' witnesses were also supported by reasonable inferences drawn from the evidence. Furthermore, the State's metaphorical characterizations of Simmons as an "animal" and "snake" were not reversible error.

> This court has held that flights of oratory, figurative speech, and false logic are not error requiring reversal. [Cit.] These may include closing argument by the district attorney char-

---

[2] In no case shall more than one counsel for each side be heard in conclusion. OCGA § 17-8-70.

acterizing a defendant as a "brute, beast, an animal, and a mad dog who did not deserve to live." [Cit.]

*Johnson v. Zant*, 249 Ga. 812 (295 SE2d 63) (1982). However, we find it unnecessary and undesirable for prosecutors to resort to such characterizations.

(c) Simmons also maintains that in its closing argument, the State impermissibly made reference to prior difficulties that were neither mentioned in its notice of intent to introduce prior difficulties, nor approved by the trial court pursuant to Uniform Superior Court Rule 31.3 (B). Simmons again failed to object. *Todd*, supra at 767.

7. Simmons' final enumeration of error is that the trial court failed to fully and adequately charge the jury.

(a) Simmons argues that the trial court failed to instruct the jury as to all three parts of the test for the admission of evidence of similar transactions or prior difficulties. Because Simmons requested a charge identical to the suggested pattern charge on prior difficulties, (Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, part 3, § P (2nd ed. 1991)), which was given by the court, he cannot now complain that the charge was given in error. *Edwards v. State*, 235 Ga. 603, 604 (221 SE2d 28) (1975).

(b) Simmons maintains that the trial court erred by refusing to instruct the jury on reckless conduct as a lesser included offense of the malice murder. We disagree.

The record evidences that the trial court instructed the jury that it could find Simmons guilty of the offense of involuntary manslaughter if it found that he "caus[ed] the death of another human being without any intention to do so by the commission of an unlawful act constituting a misdemeanor." The court then charged the jury on reckless conduct as the possible underlying misdemeanor. If a death occurs as the result of reckless conduct, a defendant is guilty of involuntary manslaughter. OCGA § 16-5-3. Here, there was no evidence of Simmons' allegedly reckless conduct other than that directly related to the death of the victim. Thus, a charge on reckless conduct had to be in the context of involuntary manslaughter. But cf. *Reinhardt v. State*, 263 Ga. 113 (428 SE2d 333) (1993) (where charge on reckless conduct required in felony murder case as a lesser included offense of arson).

*Judgment affirmed. All the Justices concur, except Fletcher, P. J., who concurs specially as to Division 2 (b) and Carley, J., who concurs in Divisions 1, 3, 4, 5, 6, 7, and in the judgment.*

FLETCHER, Presiding Justice, concurring specially in part.

I concur fully in the majority opinion except for Division 2 (b). While I agree that the prior difficulties evidence was admissible in

this case, a narrower analysis is required and would provide more guidance in the consideration of this confused area of evidentiary law.

Simmons contends that incidents occurring 11 years prior to the murder were too remote to be admissible. Lapse of time is a factor to be considered in determining admissibility of prior difficulties, but is rarely the determining factor.[3] Here, Simmons and the victim had been divorced one month at the time of the murder. The prior difficulties evidence showed a pattern that spanned the 11 years of the marriage. Because each incident involved Simmons and the victim and occurred throughout their relationship, the lapse of 11 years does not render the evidence inadmissible.

Simmons also maintains that the prior difficulties were inadmissible because they were not similar to the murder. The test of admissibility is not the number of similarities between the prior act and the charged offense; rather, it is whether the prior act is substantially relevant for some purpose other than to show the defendant's criminal character.[4] Here, Simmons contended that the shooting was an accident. Therefore, the testimony of prior difficulties during the marriage was relevant to rebut this claim. Additionally, the incidents showed a pattern of abuse and were probative of the issue of malice.

DECIDED FEBRUARY 12, 1996.

*Johnston, Brannen & Mikell, Gary L. Mikell,* for appellant.

*R. J. Martin III, District Attorney, Richard A. Mallard, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Peggy R. Katz, Assistant Attorney General,* for appellee.

---

[3] *Campbell v. State,* 234 Ga. 130, 132 (214 SE2d 656) (1975).
[4] *Farley v. State,* 265 Ga. 622, 624 (458 SE2d 643) (1995).