## 37942. JACKSON v. THE STATE.

HILL, Presiding Justice.

Carlos Jackson was tried by a jury and convicted of one count of murder and four counts of aggravated assault. The jury was authorized by the evidence to find the following facts.

On the evening of August 16, 1980, fourteen-year-old Darryl Outlaw was at Arthur Parker's apartment. That same evening the defendant and Michael Pitts, who had been drinking beer and smoking marijuana together, decided to go to Parker's apartment to collect some money Parker allegedly owed Pitts. Both Pitts and the defendant carried guns, Pitts carrying a .22 caliber revolver and the defendant a .357 magnum revolver. The defendant and Pitts knocked on the unlocked apartment door and then opened it. Parker was standing in the hallway; the defendant pointed his gun at him and said, "If you move anything I'll blow your . . . head off cause I got a .350 magnum." The defendant then made Parker lay face down on the floor.

The defendant went into the den and forced Darryl Outlaw into the living room.[1] When Outlaw made a break for the door, Pitts stopped him, pushed him down on the sofa, and pistol whipped him. The defendant "joined in." Pitts and the defendant then made Outlaw lie on the floor beside Parker. The defendant then put his knee in Parker's back and the cocked gun to his head and demanded his car keys. Parker said he didn't have them and the defendant hit him in the head with his gun. The defendant's unsuccessful search of the apartment for the car keys was interrupted by a knock at the door. At first the defendant and Pitts did not respond, but when the knocking continued the defendant told Pitts to open the door. Pitts did so and the defendant brusquely ordered the three teenagers standing there to come in; Kenneth Kemp, Calvin Pritchard and Ted Bonner entered the room. They were laughing, apparently thinking the defendant was joking, whereupon the defendant said, "I ain't joking" and shot his pistol. Once the new arrivals were lying on the floor, the defendant again asked Parker for his car keys. Parker responded that Sam, whom the defendant knew, had the keys. The defendant went over to Pritchard and struck him on the head with his gun several times. Then he pointed the gun at Pritchard and ordered him into the kitchen. Parker could hear the defendant tell Pritchard to tell Parker to give him the keys. The defendant brought Pritchard back and had him lay by Parker. Parker again said Sam had the keys. The defendant told Pitts to keep his gun on the men on the floor and again searched the apartment. When he returned to the living room he said "I'm fixing to shoot all you . . .," and shot Parker and then Outlaw before running out the door. Parker survived but Outlaw died from his wound.[2]

---

[1] It appears from Parker's testimony that there was another man in the den who hid in a closet throughout the entire incident.

[2] Most of the facts recounted to this point are from Parker's testimony.

Parker told the police that the man who shot him was named Carlos and that his (Parker's) roommate Sam Dixon knew his last name and where he stayed. In the early hours of the morning, Pritchard, Kemp and Bonner told the police that a man named Carlos was one of the perpetrators of the crime, and Bonner said he thought his name was Carlos Jackson. Later that morning the police secured an arrest warrant for the defendant, Carlos Jackson, which they executed that afternoon. The police went to the address on the warrant but found a vacant apartment. Neighbors told them that the defendant often visited at a nearby apartment, so they proceeded to that address and arrested the defendant. The arresting officer informed the defendant of his rights and placed him in a squad car. The defendant told the officer that his .357 magnum revolver was under a bed in the apartment in which he was arrested. The police retrieved it. When they reached the police station, the defendant made a statement in which he admitted going to Parker's apartment with Pitts but claimed that it was Pitts who knocked Parker to the floor, brought Outlaw in and made him lie on the floor, and shot Parker and Outlaw.[3] The state's firearms examiner testified that the bullet that killed Outlaw was fired from a .22 caliber revolver.[4] The bullet that struck Parker was not removed. Michael Pitts did not testify at the defendant's trial.

1. The defendant's first enumeration of error is that the evidence does not support the verdict. We disagree. As to the murder, Parker and Kemp both testified that they saw the defendant shoot Outlaw. Furthermore, the court charged the jury on parties to a crime. Code Ann. § 26-801. As for the aggravated assault of the other four victims, under Code Ann. § 26-1302, "A person commits aggravated assault when he assaults ... (b) with a deadly weapon." An assault is "an act which places another in reasonable apprehension of immediately receiving a violent injury." Code Ann. § 26-1301 (b). There is no requirement that the victim of the "assault" be physically injured. *Clark v. State,* 149 Ga. App. 641, 644 (255 SE2d 110) (1979). The state's evidence that the defendant committed an aggravated assault on the four surviving victims is overwhelming. This is true notwithstanding the fact that the state did not call Calvin Pritchard and the defendant did. When asked by defendant's counsel, "Were you a victim?", Pritchard responded, "Victim of what? I don't

---

[3] The statement was ruled admissible by the trial court following a Jackson-Denno hearing.

[4] Acting on an anonymous tip, police retrieved a .22 caliber revolver that tested out as the weapon that fired the fatal bullet.

understand." He also said the defendant was not trying to kill him. On cross examination, Pritchard denied knowing anything had happened to Outlaw but admitted that when he arrived at Parker's apartment, Pitts and the defendant were there and both had guns. He also admitted lying on the floor but said he did it because Pitts told him to and that no one pointed a gun at him.

Viewing the evidence in the light most favorable to the jury's verdict, we hold that a rational trier of fact could have found the defendant guilty of aggravated assault upon Calvin Pritchard and the other survivors beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Alexander v. State,* 247 Ga. 780 (1) (279 SE2d 691) (1981).

2. Defendant complains that the testimony of a police officer impermissibly placed the defendant's character in issue. After hearing the defendant's motion for mistrial the trial court overruled the motion, but instructed the jury not to consider the witness's remark. Since the defendant did not renew his motion after the curative instructions, he cannot complain on appeal. *Burgess v. State,* 149 Ga. App. 630, 631 (255 SE2d 100) (1979); Daniel, Georgia Criminal Trial Practice § 20-59 (1980 Supp.). Therefore we need not reach the defendant's contention that the remark, having been made by a law enforcement officer, mandated reversal. See *Boyd v. State,* 146 Ga. App. 359 (246 SE2d 396) (1978).

3. The defendant complains that the trial court erred in denying his motion to suppress the .357 magnum found under the bed in the apartment in which he was arrested. He does not, however, cite to a motion to suppress in the record and we are unable to find one, and when the gun was tendered into evidence he stated that he had no objection. Thus there is nothing for this court to review.

4. Defendant complains that the photo lineup shown to Parker from which he identified the defendant was impermissibly suggestive, and that the trial court erred in failing to rule on whether or not it was impermissibly suggestive. We disagree on both counts. The trial court expressly stated that it found the lineup was not impermissibly suggestive. Having reviewed the photographs, we agree. Thus this enumeration of error has no merit. *Payne v. State,* 233 Ga. 294, 300 (210 SE2d 775) (1974). Moreover, Parker testified that he was personally acquainted with the defendant, having known him over a period of two years. Thus the trial court did not err in allowing Parker to identify the defendant.

5. The defendant contends the trial court erred in "volunteering" to recharge the jury on parties to a crime and conspiracy. Having reviewed the record, we find that the trial court correctly perceived from the jury's repeated requests for recharge

that it desired instruction on the law as to parties to a crime and conspiracy, even though the jury did not use those words. We find no error in the trial court's action. *Barraza v. State,* 149 Ga. App. 738 (2) (256 SE2d 48) (1979), cert. denied, 444 U. S. 951 (1979).

6. Defendant's final contention is that the trial court erred in imposing sentence without the benefit of a "presentence investigation report" despite defendant's request that one be made. The phrase "presentence investigation report" is misleading. In Georgia we have probation reports, Code Ann. § 27-2709 (a) (b), which are used not to set the defendant's sentence but to determine if the defendant's sentence should be suspended or if he should be placed on probation. *Munsford v. State,* 235 Ga. 38, 45 (218 SE2d 792) (1975). Whether or not to order a probation report is a matter within the discretion of the trial court. Code Ann § 27-2709 (b). Here the defendant was convicted of murder and the life sentence was mandatory. Code Ann. § 26-1101 (c). The trial court clearly did not abuse his discretion in imposing sentence without a probation report.

As for the aggravated assault convictions, probation of sentences imposed consecutive to a life sentence is a rarity rather than the usual practice;[5] *Threatt v. State,* 156 Ga. App. 345 (274 SE2d 734) (1980), is distinguishable, and the trial court did not err in sentencing the defendant.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 13, 1981.

*Hinkle, Notte & Bianco, Guy J. Notte,* for appellant.

*Lewis R. Slaton, District Attorney, Benjamin H. Oehlert III, Assistant District Attorney, Michael J. Bowers, Attorney General, Charles E. Brown, Staff Assistant Attorney General,* for appellee.

---

[5] The trial court sentenced the defendant to life imprisonment for the murder of Darryl Outlaw, 10 years consecutive to the life term for the aggravated assault of Arthur Parker, and 10 years each for the aggravated assaults of Calvin Pritchard, Kenneth Kemp and Ted Bonner, those sentences to run concurrently with the sentence for the aggravated assault of Parker.