## S98A1329. KYLER v. THE STATE.

(508 SE2d 152)

SEARS, Justice.

Appellant Earnest Kyler appeals his murder conviction and resulting sentence of life imprisonment.[1] Having reviewed the record, we conclude that while portions of the district attorney's opening statement were improper, Kyler's failure to seek either a curative instruction or the declaration of a mistrial renders harmless any error in allowing the statement. Furthermore, while we disapprove of the district attorney's treatment of a defense witness, Kyler's failure to object to that treatment renders the issue waived on appeal. Finally, while the district attorney engaged in improper tactics during closing arguments, the trial court's curative instruction and the

---

[1] The murder was committed on October 7, 1992, and Kyler was indicted on November 14, 1995 on charges of malice and felony murder, with aggravated assault being the underlying felony. A trial was held from November 20-21, 1996, and Kyler was found guilty on both counts. Kyler was sentenced to life imprisonment on the malice murder conviction, and the felony murder conviction was vacated by operation of law. Kyler filed a motion for new trial on December 20, 1996, and the motion was denied on April 16, 1998. The transcript was certified by the reporter on January 30, 1997. Kyler timely filed a notice of appeal on April 30, 1998. The appeal was docketed with this Court on May 13, 1998, and submitted for decision without oral argument on July 6, 1998.

overwhelming evidence of Kyler's guilt convince us there were no harmful consequences. There being no merit to Kyler's other contentions, we affirm.

The facts are relatively straightforward. On October 7, 1992, Kyler and his co-defendant Bedgood went to the apartment of Sharon Washington in search of her boyfriend, Scott Davis. Kyler knocked on the apartment's door and requested that Davis come outside. When Davis came to the door, an argument erupted, and Kyler fatally stabbed Davis in the chest. He died at the scene. Washington witnessed the crime, and later identified Kyler as the man who stabbed Davis. She then led police to Kyler's apartment. The next day, co-defendant Bedgood turned himself in and confessed to the killing. He later recanted his confession, and said that appellant Kyler threatened him into making a false confession. A joint trial was held, at which Kyler was convicted and Bedgood was acquitted.

1. Viewed in a light most favorable to the jury's verdict, the evidence was sufficient to enable a rational tier of fact to find Kyler guilty of malice murder.[2]

2. In his opening statement, the district attorney stated that he sought a not guilty verdict for co-defendant Bedgood, and a guilty verdict for Kyler. That statement violated the prohibition against counsel making prejudicial statements before the jury that are not supported by evidence.[3] Moreover, the statement unduly prejudiced Kyler by implying, at least implicitly, that the district attorney harbored personal reservations about Bedgood's guilt, but nonetheless was required to prosecute co-defendant Bedgood due to his indictment for the crimes.

However, even though the trial court sustained Kyler's objection to the statement, Kyler failed to move either to strike the statement or for a mistrial, and also failed to request curative instructions. "It is well settled that a sustained objection to improper argument of counsel cannot serve as the basis for reversal unless it is contemporaneous with a denied motion for mistrial, denied request to strike, or denied request for curative instructions."[4] Accordingly, we reject Kyler's claim that the State's improper argument requires that his conviction be reversed.

3. The trial court did not err in allowing Washington to testify that in her opinion, at the time Davis was stabbed, co-defendant Bedgood could not have touched Davis from where he was standing, and that she observed Kyler hit Davis in the chest. Washington had

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] OCGA § 17-8-75; see *Massey v. State*, 263 Ga. 379 (434 SE2d 467) (1993); *Smith v. State*, 261 Ga. 512 (407 SE2d 732) (1991).

[4] *Prince v. State*, 257 Ga. 84, 88 (355 SE2d 424) (1987).

previously testified that in the moments before Davis was fatally stabbed in the chest, she observed co-defendant Bedgood standing well behind Kyler at her apartment door as Kyler argued with Davis. A witness may give testimony of her own opinion as to the existence of a fact, so long as the opinion is based upon the witness's own observations.[5]

4. The trial court did not err in admitting into evidence the police photo album used by Washington at police headquarters shortly after the stabbing to identify Kyler as the killer. The photo album contained a photo of Kyler, and was shown to Washington at trial by the district attorney. She stated that she recognized the photo album as the one she used in the photo lineup shortly after the killing. She also identified a statement she had signed while at the lineup identifying Kyler's photo as the one she picked out of the photo lineup. The chain of custody requirement does not apply to distinct and recognizable objects that can be identified upon observation, such as the photo album in this case.[6] Accordingly, there was a sufficient basis to warrant the album's admission into evidence.

5. The trial court properly admitted relevant pre-autopsy photos of the deceased victim to show the location and severity of his wounds.[7]

6. The trial court did not err in allowing the prosecution to conduct a thorough and sifting cross-examination of Kyler regarding his various living arrangements, his family relationships, and his employment status. These probing questions revealed, among other things, Kyler's attempts to elude capture following the murder. When compared against the testimony of other witnesses, Kyler's thorough cross-examination also effectively tested his capacity for veracity. The scope of cross-examination is, of course, a matter for the trial court's discretion.[8] For the reasons discussed above, we conclude that no discretionary abuse occurred here.

7. After conducting the cross-examination of one of Kyler's witnesses, Jordan, the district attorney improperly stated in the jury's presence that there were two outstanding warrants for Jordan's arrest, and that he should not be excused from the courtroom after leaving the witness stand. A witness's credibility may be impeached upon showing conviction for a crime of moral turpitude,[9] or upon introducing a certified copy of a prior felony conviction.[10] It is

---

[5] *Johnson v. Knebel*, 267 Ga. 853, 856 (485 SE2d 451) (1997); see OCGA § 24-9-65.

[6] See *Gadson v. State*, 263 Ga. 626, 627 (437 SE2d 313) (1993).

[7] See *Berry v. State*, 267 Ga. 605, 612 (481 SE2d 203) (1997).

[8] *Timley v. State*, 268 Ga. 611, 612 (492 SE2d 214) (1997).

[9] *Hawes v. State*, 266 Ga. 731, 733 (470 SE2d 664) (1996).

[10] *O'Toole v. State*, 258 Ga. 614, 616 (373 SE2d 12) (1988).

improper, however, for the district attorney to attack a witness's credibility upon the basis of outstanding warrants, since they do not even rise to the level of accusations, much less convictions. In this case, the impropriety of the district attorney's conduct was heightened when he failed to identify the bases for the outstanding warrants against Jordan, instead leaving that determination to the jury's imagination. We find nothing at all redeeming about the district attorney's conduct. Kyler failed to object to the remark, however, and that failure renders this issue waived on appeal.[11]

8. The trial court did not err in refusing to give Kyler's requested charge concerning two equal theories, because the case did not rest entirely upon circumstantial evidence, as there was direct evidence of Kyler's guilt provided by Washington's eyewitness testimony. Hence, a charge on two equal theories was not warranted in this case.[12]

9. The trial court did not err in allowing the prosecutor to state, during closing argument, that Davis was killed over a drug debt. The prosecutor's statement was based upon testimony recounting a statement made by Washington to police officers immediately after the killing that her boyfriend had been killed, and the murder was committed due to twenty dollars owed for drugs. Thus, the prosecutor's statement was based upon a reasonable and legitimate inference drawn from the evidence, and it was properly allowed.[13]

10. During closing argument, the district attorney displayed a ream of computer paper before the jury, and indicated it was Kyler's arrest record. In response, Kyler moved for a mistrial. That motion was denied by the trial court. At a conference the following morning, held before the jury was charged, Kyler renewed his motion for a mistrial. Again the trial court denied the motion.

As stated above, Kyler's credibility was subject to impeachment on the basis of a prior conviction for a crime of moral turpitude or upon the introduction of a certified felony conviction.[14] In this case, however, the district attorney chose not to follow that procedure for impeachment while Kyler was being cross-examined. Instead, the district attorney improperly referred to a lengthy document — one that had not been introduced into evidence — as Kyler's arrest

---

[11] *Ledford v. State*, 264 Ga. 60, 63 (439 SE2d 917) (1994).

[12] *General v. State*, 256 Ga. 393, 394 (349 SE2d 701) (1986).

[13] See *Morgan v. State*, 267 Ga. 203 (476 SE2d 747) (1996). As noted, Washington's statement was recounted during the testimony of a police officer. That testimony also showed that Washington gave her statement immediately following the murder, and that she was "hysterical" at that time. Hence, it fell within the "excited utterance" exception to the rule against hearsay testimony. See *Hicks v. State*, 256 Ga. 715, 723 (352 SE2d 762) (1987); OCGA § 24-3-3.

[14] *Hawes*; *O'Toole*, supra.

record. It is well established that the prosecution is prohibited from injecting into its closing argument extrinsic and prejudicial materials which have no basis in the evidence.[15] By referencing the computer ream in this case, the district attorney violated both this precept and his duty to protect the fair trial rights of criminal defendants.

In assessing the impact of the district attorney's improper conduct on Kyler's right to a fair trial, we note that, at the conference held after the denial of Kyler's renewed mistrial motion, the trial court indicated that it believed a curative charge was in order. The court then went on to charge the jury that:

> If an objection was made or sustained . . . as to any question or comments made by counsel during . . . their statements to you or to any document referenced by counsel which is not in evidence, you must not speculate as to what counsel was referencing or as to the reason for the objection. *Since the . . . particular document being referenced by counsel is not in evidence, you are not to suspect, speculate or infer as to . . . what is contained in any document not in evidence, and therefore those items should not be used by you or considered by you in reaching your decision in this case.*

(Emphasis supplied.) Assessing the harm done by the district attorney's misconduct in light of this curative instruction, and in light of the overwhelming evidence of Kyler's guilt, which included eyewitness testimony, we conclude it is highly unlikely that this single portion of the closing argument contributed to the guilty verdict, and thus any error associated with the district attorney's improper argument was harmless.[16]

*Judgment affirmed. All the Justices concur, except Carley, J., who concurs in the judgment only as to Division 7.*

DECIDED OCTOBER 26, 1998.

*E. Ronald Garnett,* for appellant.

*Daniel J. Craig,* District Attorney, *Thurbert E. Baker,* Attorney General, *Elizabeth L. Jaeger,* Assistant Attorney General, for appellee.

---

[15] *Bell v. State,* 263 Ga. 776, 777 (439 SE2d 480) (1994).

[16] See *Carter v. State,* 269 Ga. 891 (506 SE2d 124) (1998); *Wyatt v. State,* 267 Ga. 860, 865 (485 SE2d 470) (1997).