## A02A1389. STONE v. THE STATE.
### (570 SE2d 715)

BLACKBURN, Chief Judge.

Following a jury trial, Charles Stone appeals his convictions on five counts of armed robbery, contending that (1) the trial court erred in failing to grant a mistrial where the State, during closing argument, improperly commented on Stone's exercise of his right to remain silent and (2) the trial court's charges lessened the State's burden of proof and shifted the burden of proof to Stone. For the reasons set forth below, we affirm.

Viewed in a light most favorable to the verdict, the record shows that shortly after midnight on March 27, 1991, Stone and an accomplice approached Dexter Tuggle in a store parking lot. Stone pulled out an automatic pistol and took from Tuggle his money and car keys; he and his accomplice then drove away in Tuggle's Monte Carlo.

On the following night, Stone and his accomplice drove Tuggle's car to Perkerson Park, where they robbed at gunpoint Suzette Spencer and Anthony Welch, taking from Spencer her purse and from Welch his wallet, watch, and car, a blue Mercury Marquis.

Stone and his accomplice drove the Mercury from Perkerson Park to South Bend Park, where they took, again at gunpoint, Gwen Wilburn's jewelry and purse and Johnny Russell's billfold and money. When the two robbers sped away, they were noticed by the police, who gave chase. The robbers wrecked the car; Stone was apprehended after a brief chase, but his accomplice escaped. Proceeds of the recent robberies were found inside the car and on the ground at the point where Stone was caught by the police.

Stone was arrested on March 28, 1991. He was tried and convicted in Fulton Superior Court on November 22, 1991, and was sentenced on February 17, 1992. He filed a motion for new trial on March 18, 1992. The trial transcript was filed on April 23, 1993. On February 25, 1995, original counsel was permitted by the court to withdraw and present counsel was assigned to this case as substitute counsel. An amended motion for new trial was filed on March 9, 2001. Stone's motion for new trial was denied on October 25, 2001,

approximately nine years and seven months after he was sentenced. Stone was incarcerated for a period of 310 days between arrest and trial, approximately three months between trial and sentence, one month between sentence and the filing of the original motion for new trial, and over nine years and seven months between the filing and the denial of the motion for new trial, a total of approximately ten years and eight months, to get through the trial stage. In addition, Stone has been incarcerated over nine months from the filing of his notice of appeal through the date of this opinion. To date, Stone has been incarcerated a total of approximately eleven years and five months, while the judicial system resolves the question of his guilt or innocence. While this Court has affirmed Stone's conviction, it is still subject to further appellate review. The courts have a duty to the citizens of this state to oversee the criminal justice system and to ensure that those who are accused of crimes are tried expeditiously, and that their constitutional rights are protected. The delay which has occurred in this case is simply not acceptable. The legislature has provided that a defendant must file a motion for new trial within 30 days of the entry of the judgment on the verdict. This and other statutorily established time limits clearly indicate the intention of the legislature that criminal matters be resolved promptly. Ten years is too long to take to address a motion that must be filed in thirty days. The judicial branch, prosecutors, and the criminal defense bar all have a duty to meet their respective responsibilities in ensuring that criminal cases are promptly resolved.

1. Stone contends that the trial court erred in denying his motion for mistrial after the State, during closing argument, improperly commented on his exercise of his right to remain silent. "The abuse of discretion standard applies to the review of the denial by the trial court of a motion for mistrial." *Underwood v. State.*[1] We find no abuse of discretion on the part of the trial court.

During cross-examination, defense counsel asked the arresting officer if he had asked Stone about his accomplice, and the arresting officer replied that he had asked Stone about his accomplice after advising him of his *Miranda*[2] rights. Defense counsel then asked the officer what Stone had told him. At this point, the State objected, but the trial court overruled the objection. The officer then testified that when asked about his accomplice, Stone had not given the accomplice's name but had simply stated that he lived in Carver Homes. Defense counsel next asked the officer if Stone had told him how he came to be with the accomplice; the officer stated that at this point,

---

[1] *Underwood v. State*, 218 Ga. App. 530, 534 (3) (462 SE2d 434) (1995).

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

Stone "clammed up." Defense counsel went on to ask the officer whether Stone had told him that he had "just caught a ride with him," and the officer said that Stone had not.

Stone testified at trial that on the night of March 28, 1991, he had gone with his girlfriend and others to the home of his girlfriend's father. Around midnight, he decided to go home and called a cab. When the cab did not show up, he got a ride with a man he had met once before through his girlfriend's sister. Stone testified that the man was driving above the speed limit and that when he went through a yellow light, a police car started following them. Stone told the driver that the police were following and asked him if he had a license and insurance. The driver replied in the negative and then told Stone that the car was "hot." After the driver increased his speed and ran a stop sign, the police turned on their lights and gave chase. Shortly thereafter, the driver crashed the car. Both men jumped out and ran. Stone was caught by the police, but the driver escaped.

Defense counsel also asked Stone what had happened after Stone was identified by several of the victims. Stone replied:

> Okay. After I was identified, they called the ambulance. The ambulance came. Two people got out the ambulance. They looked at my legs. Told them I needed to be taken to Grady before I was taken to jail. They left. They finished writing the report. The police, you know, he was asking me about did I know the other guy. I was telling him all I know, you know, by [sic] I had seen him before. I didn't know him personally, you know, all I know that he stayed in Carver Homes. That's it. But as far as knowing him personally where I could take him to where he was at or something like that, I couldn't do that.

In closing argument, the prosecutor stated:

> [T]he police officer told you upon defense counsel's questioning, did the defendant [make] any statements at the scene? He told you yes the defendant said he lives in Carver Homes. That's all he said. Well, Ladies and Gentlemen, wouldn't it be reasonable that if the story was as the defendant would have you believe he could say, listen, I don't know why you all have these people looking at me but, by golly, let me tell you what it is. I was over at Pam Marshall's house. I just left there ten minutes ago. Lo and behold you guys jumped behind me.

Defense counsel objected to this argument, and the court instructed the jury that Stone "was not required to make any statement" or to "tell the police anything at any time." The prosecutor then continued:

> But he was *Mirandized*. Upon defense counsel's questioning — the State didn't question him on this. Defense counsel wanted to know — defense counsel wants you to know what the defendant said at the scene that night. Well, ask yourself, ask the defendant why he didn't say, hey, I mean, if you are going to talk to him, why not tell the truth? Why not tell the police that night what you told us this morning instead of having about seven or eight months to find alibi witnesses at the jail and come in and give us malarkey.

Stone failed to renew his motion for mistrial or ask for additional instructions after the judge instructed the jury, and the State continued its argument.

Stone's argument that he is entitled to a new trial because the State improperly commented on his exercise of his right to remain silent must fail for several reasons. First, as noted above, Stone failed to renew his motion for mistrial after the trial court gave curative instructions to the jury. Where a defendant objects and moves for a mistrial during the State's closing argument "and the trial court denies the motion but takes some corrective action, if the defendant is dissatisfied with that action, he must renew the objection or motion; otherwise, the issue is waived. [Stone's] silence after the trial court's purported corrective action amounts to a waiver." (Footnote omitted.) *Frazier v. State*.[3] See also *Pless v. State*[4] (holding that "the defendant failed to preserve this issue for appeal by renewing his motion for mistrial after the curative instructions by the trial court").

Second, the prosecutor's closing argument was not a comment on the defendant's silence. Stone was not silent at the time of his arrest and spoke to the police officer after being advised of his *Miranda* rights. In Stone's own words, he was "telling him all I know." Neither was Stone silent at trial. In arguing as it did in closing, the State was not commenting on Stone's silence but was instead pointing out that when Stone first spoke to the police, he did not, or could not, provide information supporting his alibi, as he did when he took the stand at trial. We recognize that in *Doyle v. Ohio*,[5] the United States Supreme Court held that an accused's post-*Miranda* silence could not be constitutionally used for impeachment purposes. But, "another issue

[3] *Frazier v. State*, 247 Ga. App. 500, 501-502 (544 SE2d 198) (2001).

[4] *Pless v. State*, 260 Ga. 96, 98 (2) (390 SE2d 40) (1990).

[5] *Doyle v. Ohio*, 426 U. S. 610 (96 SC 2240, 49 LE2d 91) (1976).

altogether is presented when the defendant gives one version of his [story] to the police and then gives the jury a different version. In that instance the earlier *statement* of the defendant is admissible for purpose of impeachment of his sworn testimony at trial." *Wilson v. State*.[6] The State's comments "were comments on [Stone's] election to speak, if they were comments at all." *Wallace v. State*.[7] Such comments were permissible deductions based on the discrepancy between what Stone said to the police officer at the time of his arrest and what Stone told the jury at trial.

Third, the State's line of argument was invited by defense counsel's cross-examination of the arresting officer. By asking the officer questions that suggested answers consistent with Stone's alibi, such as whether Stone had told the officer how he had come to be with the accomplice or that he had caught a ride with the accomplice, and then putting Stone on the stand so that he could present his alibi to the jury, the defense counsel opened the door to the State's argument. *Wallace*, supra at 741. See also *Burney v. State*[8] ("[b]y questioning the witnesses on these matters, the appellant opened the door to the questioning by the district attorney on the same matters"). Stone cannot pursue a line of questioning, over objection from the State, which is intended to support his alibi and then complain when the State draws permissible conclusions from the responses to that line of questioning.

Finally, even if the State's argument had been a comment on Stone's exercise of his right to remain silent, and proper objection was made,

> [i]mproper reference to a defendant's silence, however, does not automatically require reversal. Assuming that a defendant has preserved the point by proper objection, the error may be harmless beyond a reasonable doubt. The determination of harmless error must be made on a case by case basis, taking into consideration the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of defendant's guilt.

(Citations omitted.) *Hill v. State*.[9] In this case, the positive identifications of five witnesses, his apprehension in flight, and the recovery of

---

[6] *Wilson v. State*, 145 Ga. App. 315, 324 (5) (244 SE2d 355) (1978).

[7] *Wallace v. State*, 246 Ga. 738, 741 (2) (273 SE2d 143) (1980).

[8] *Burney v. State*, 244 Ga. 33, 39 (4) (257 SE2d 543) (1979).

[9] *Hill v. State*, 250 Ga. 277, 283 (4) (a) (295 SE2d 518) (1982).

the stolen property at the scene provided overwhelming evidence of Stone's guilt. See *Bruce v. State*.[10]

2. Stone contends that the trial court erred in failing to charge properly on the principle of reasonable doubt. The trial court charged the jury on reasonable doubt as follows:

> Now, Ladies and Gentlemen, a reasonable doubt means exactly what it says. It is a doubt founded upon a reason. A reasonable doubt may grow out of the evidence or a lack of evidence or conflict in the evidence. While the law requires the state to prove the defendant's guilt of the offense charged to your satisfaction beyond a reasonable doubt, yet the law does not require the state to prove the defendant's guilt to a mathematical or absolute certainty. A reasonable doubt is not a vague or a conjectural doubt. It is not a fanciful doubt. It is not an imaginary doubt. Neither does it mean a possibility that the defendant may be innocent. But as the court has stated to you, it is a doubt that is founded upon reason.

Stone contends that the language in the charge stating "[n]either does it mean a possibility that the defendant may be innocent" eliminates the possibility that the jury might believe that the defendant may have committed the crime but the State failed to meet its burden.

In *Coleman v. State*,[11] our Supreme Court disapproved use of the language to which Stone objects. However, the *Coleman* decision, rendered in 1999, makes clear that its ruling would not be retroactive. Accordingly, the giving of this charge, as in the *Coleman* case, was not reversible error.

3. The trial court's charge on intent was as follows:

> A crime is a violation of a statute of this state in which there shall be a union or joint operation of act and intention. This just simply says that if there's no statute prohibiting it, it's not a crime in the State of Georgia. A crime involves both the act, that is, the act that is prohibited and the intention to commit that act. Basically putting it another way, you might say crimes are not accidental. You don't accidentally commit crimes. So the State contends that the defendant intentionally did certain acts here to amount to armed robbery. That's for you to determine.

---

[10] *Bruce v. State*, 263 Ga. 273, 274 (3) (430 SE2d 745) (1993).
[11] *Coleman v. State*, 271 Ga. 800, 804 (523 SE2d 852) (1999).

Stone argues that in charging the jury that there is no such thing as an accidental crime, the trial court eliminated the necessity for the State to prove the intent element of the offense.

The instruction that crimes are not committed by accident was not erroneous. Such an instruction is an authorized reference to OCGA § 16-2-2, which provides that "[a] person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence." "Because the charge was correct in substance, there was no error." *Hamilton v. State*.[12]

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED SEPTEMBER 6, 2002.

*Sharon L. Hopkins*, for appellant.

*Paul L. Howard, Jr.*, District Attorney, *Peggy R. Katz, Marc A. Mallon*, Assistant District Attorneys, for appellee.

---

[12] *Hamilton v. State*, 260 Ga. 3, 5 (5) (b) (389 SE2d 225) (1990).