## A02A2186. CLONTS v. THE STATE.
(579 SE2d 1)

RUFFIN, Presiding Judge.

A jury found Jake Hayden Clonts guilty of one count of aggravated sodomy.[1] On appeal, Clonts argues that the trial court erred in admitting certain evidence and that the court abused its discretion in failing to grant a mistrial following the State's improper closing argument. Clonts also contends that he received ineffective assistance of counsel. Finding no error, we affirm.

Viewed in a light favorable to the jury's verdict, the evidence shows that on December 4, 1999, Clonts hosted a party to celebrate his wife's birthday. The victim and her fiancé were present at the party. The group initially met at the Clontses' house for pre-dinner cocktails before going to a Mexican restaurant for dinner. According to the victim, she had a pre-dinner margarita and a shot of tequila at the restaurant.

After dinner, the guests returned to the Clontses' home to continue the party. Upon arrival, Clonts told the victim's fiancé that he had Xanax, which a doctor testified is a prescription drug that has a sedative effect, particularly when combined with alcohol. The victim estimated that she had four or five drinks that night. At some point, the victim had a drink, which was brought to her by Clonts. The testimony is conflicting regarding what transpired next. According to the victim, approximately an hour and a half after finishing the drink Clonts gave her, she "blacked out." The victim was taken to an upstairs guest bedroom. However, evidence also was presented that the victim and Clonts' wife were in the guest room and talked for some time before they both fell asleep. Clonts' wife subsequently awoke and returned to her own bedroom.

Later, the victim's fiancé came upstairs to sleep in the guest room, but was unable to fall asleep. The fiancé decided to go home,

---

[1] Although Clonts was also charged with rape and aggravated sexual battery, the jury acquitted him of these charges.

and he attempted to wake the victim, who was unresponsive. The fiancé then left the victim in the guest room and drove home. As the fiancé left, he told Clonts that he could not wake up his fiancée and would return the next morning to get her.

In the early hours of the morning, Clonts entered the guest room. The victim testified that she regained consciousness when she experienced pain in her rectum, and she heard Clonts tell her "to be quiet." According to the victim, she drifted in and out of consciousness, leading her to believe that there was something in the drink Clonts had given her other than alcohol. The victim testified that Clonts sodomized her, had forcible vaginal intercourse with her, and performed oral sodomy.

Clonts left home early in the morning to go hunting. After Clonts left, the victim gathered her clothing and discovered that the zipper on her pants had been broken. The victim called her fiancé to pick her up. The victim initially did not tell her fiancé what had happened. Later that morning, however, she told him that she had been assaulted. The fiancé called Clonts, who denied touching the victim.

The fiancé took the victim to the hospital where she was examined by Dr. Forster. Because the victim alleged that she had been assaulted, Dr. Forster reported the victim's allegations to the sheriff's department, and Detective Kilgore interviewed the victim at the hospital. According to Kilgore, the victim was shaking and crying as she gave her statement. Dr. Forster testified that, while examining the victim, he discovered bruising on her arms and two small lacerations around her anus that were consistent with anal intercourse. Dr. Forster also collected DNA evidence from the victim, which "originated from [Clonts] or his identical twin." Clonts subsequently admitted having sexual intercourse with the victim, but claimed that it was consensual. According to Clonts, he went into the guest bedroom because he thought his wife was in there, and the victim essentially seduced him.

1. Clonts contends that the trial court erred in admitting evidence that Clonts said to the victim's fiancé, "I've got five hundred Xanaxes." The trial court admitted the statement as part of the res gestae. According to Clonts, the trial court abused its discretion in admitting this evidence that "was marginal in both reliability and remoteness." Clonts further argues that any probative value of the evidence was far outweighed by its prejudicial value.

"The admission of evidence is a matter committed to the sound legal discretion of the trial judge, whose determinations will not be disturbed on appeal unless they constitute an abuse of that discre-

tion."[2] "Unless the potential for prejudice substantially outweighs the probative value, Georgia law favors the admission of relevant evidence, no matter how slight its probative value."[3] Moreover, "[e]vidence which is relevant to an issue in a case is not rendered inadmissible by the fact that it incidentally puts the defendant's character in issue."[4]

Here, the State's theory of the case was that Clonts drugged the victim with Xanax in order to take advantage of her. The evidence supporting this theory was the fiancé's testimony that Clonts said he had Xanax, which Dr. Forster testified has a sedative effect, and the victim's testimony that she believed there was something in her drink other than alcohol. Although Clonts' argument is not entirely clear, he seems to suggest that the State's theory was based on such tenuous evidence that the evidence should have been excluded. We disagree. The evidence — however tenuous — spoke for itself. Clonts was free to point out to jurors the lack of evidence corroborating the State's theory, which Clonts' attorney did during closing arguments. Under these circumstances, we find no abuse of discretion in the admission of the evidence.

2. Clonts asserts that the trial court abused its discretion in failing to grant a mistrial after the prosecutor twice stated during its closing argument that the fiancé "saw the defendant with white pills the defendant told him was Xanax." In fact, the fiancé testified that Clonts *said* he had Xanax, but there is no evidence that the fiancé saw any pills. The second time the prosecutor made the incorrect statement, the trial court instructed the jury that "counsel is not allowed under our rules to make statements with regard to items that are not in evidence. There is no testimony in this record from [the fiancé] or from any other witness that they saw five hundred Xanax."

According to Clonts, notwithstanding the trial court's curative instruction, the prosecutor's improper characterization of the evidence was highly prejudicial, particularly in view of the less-than-compelling evidence that Clonts actually had Xanax on the night in question. However, after the trial court gave its curative instruction, Clonts failed to renew his motion for mistrial, thus waiving any error.[5]

3. In a related enumeration of error, Clonts maintains that the trial court should have precluded the State from arguing that Xanax was involved in the crime. During trial, the State attempted to intro-

---

[2] (Punctuation omitted.) *Ginn v. State*, 251 Ga. App. 159 (1) (553 SE2d 839) (2001).

[3] *Anderson v. State*, 238 Ga. App. 866, 874-875 (6) (519 SE2d 463) (1999).

[4] (Punctuation omitted.) *Ritter v. State*, 272 Ga. 551, 554 (3) (532 SE2d 692) (2000).

[5] See *Ford v. State*, 269 Ga. 139, 141 (3) (498 SE2d 58) (1998).

duce additional evidence linking Clonts to the possession of Xanax, including evidence that the fiancé saw Clonts using Xanax in 1999 and evidence that Mrs. Clonts had destroyed some suspected Xanax after her husband allegedly raped the victim. The trial court disallowed any Xanax evidence except for the fiancé's statement that Clonts said he had 500 Xanax pills. Again, Clonts seems to argue that, because the evidence of drug use was so tenuous, it was tantamount to trying him based upon speculation and innuendo. Clonts asserts that the error was compounded by the prosecutor's misstatements in closing argument that the fiancé *saw* the drugs.

"As a general rule, prosecutors are granted wide latitude in conducting closing argument, and defining the bounds of such argument is within the trial court's discretion."[6] Here, given that there was some evidence from which the State could infer that drugs were involved, the trial court did not abuse its discretion in permitting the State to argue such during closing. And, as the trial court corrected the prosecutor's misstatement to the jurors, we find Clonts' argument unavailing.

4. Clonts argues that the cumulative effect of the prosecutor's improper statements during closing argument deprived him of a fair trial. In addition to the prosecutor's misstatement regarding the Xanax, Clonts points to two other statements, which he contends were improper.

(a) The prosecutor stated that the victim was afraid of Clonts, whom the prosecutor described as a "two hundred and forty pound goon, beast." Clonts' attorney objected to this statement, but the objection was overruled. Again, "the permissible range of argument during final summation is 'very wide.'"[7] And where unflattering descriptions of the defendant can be fairly inferred by the evidence, appellate courts generally will not disturb the verdict simply because inflammatory language was used.[8]

(b) The prosecutor also argued that "[i]t was not easy for [the victim] to be held up to the public scrutiny in regards to whether what she was saying was the truth or not. Why would [the victim] put herself through that?" Again, Clonts' attorney objected, and the trial court sustained the objection, although no curative instruction was requested or given.

---

[6] *Arnold v. State*, 249 Ga. App. 156, 162 (4) (545 SE2d 312) (2001).

[7] *Simmons v. State*, 266 Ga. 223, 228 (6) (b) (466 SE2d 205) (1996).

[8] See id. at 228-229 ("This court has long held that flights of oratory, figurative speech, and false logic are not error requiring reversal. These may include closing argument by the [prosecutor] characterizing a defendant as a brute, beast, an animal, and a mad dog who did not deserve to live.") (citations and punctuation omitted).

On appeal, Clonts asserts that the prosecutor's statement violated the "golden rule."

> In a classic "golden rule" argument, jurors are invited to place themselves in the victim's place in regard to the crime itself. However, any argument, regardless of nomenclature, which importunes the jury to place itself in the position of the victim for any purpose must be carefully scrutinized to ensure that no infringement of the accused's fair trial rights has occurred.[9]

In this case, the prosecutor did not ask the jurors to put themselves in the victim's place in regard to the crime. Rather, the prosecutor asked the jurors to put themselves into the victim's place in regard to the difficulty of testifying. Accordingly, this is not a classic "golden rule" violation.[10] Although the better practice is to avoid any such comparisons with the victim in closing argument, such statements do not automatically warrant reversal.[11]

Moreover, Clonts' attorney objected to the statement, and the trial court sustained the objection. Clonts neither asked for curative instructions nor moved for a mistrial. Under these circumstances, the trial court's failure to sua sponte provide additional relief provides no basis for reversal.[12] To the extent that Clonts argues that the prosecutor's statements deprived him of a fair trial and were, therefore, unconstitutional, we note that this argument was not raised before the trial court. It follows that this Court will not address this argument on appeal.[13]

5. In two enumerations of error, Clonts asserts that he received ineffective assistance of trial counsel. "For [Clonts] to prevail on his ineffective assistance claim, he must rebut the presumption that counsel was effective and show that his attorney's performance was deficient and that the deficiency prejudiced his defense."[14] This Court will affirm the trial court's finding of effectiveness unless clearly erroneous.[15]

(a) According to Clonts, his attorney was ineffective for failing to call or question three witnesses to impeach the testimony of the victim and her fiancé and buttress Clonts' theory of the case, which was

---

[9] (Citation omitted.) *Hines v. State*, 246 Ga. App. 835, 837 (3) (541 SE2d 410) (2000).

[10] See *Horne v. State*, 192 Ga. App. 528-529 (2) (385 SE2d 704) (1989).

[11] See id. (trial court did not abuse its discretion in denying mistrial).

[12] See *Kyler v. State*, 270 Ga. 81, 82 (2) (508 SE2d 152) (1998).

[13] See *Griffin v. State*, 242 Ga. App. 878, 880-881 (2) (531 SE2d 752) (2000).

[14] (Punctuation omitted.) *McRae v. State*, 252 Ga. App. 100, 103 (4) (555 SE2d 767) (2001).

[15] See id.

that the victim fabricated the sexual assault after her fiancé — who was prone to violence — returned to the Clonts' home and discovered the two in bed.

One of the witnesses, Heather Jenkins, testified at the hearing on Clonts' motion for new trial that the victim had told her contradictory versions of what had occurred. According to Jenkins, the victim told her that she was not "passed out" when the assault occurred. In addition, although the victim first said that she called her fiancé after Clonts assaulted her, she later told Jenkins that her fiancé just showed up without being called. Similarly, Greg Sexton testified that the fiancé initially told Sexton that he had been called to pick up the victim, who had been raped by Clonts. In a subsequent conversation, however, the fiancé indicated that the victim's clothes were torn after he returned to the Clontses' home on his own volition and discovered the victim in bed, undressed. Although these two witnesses may have served to impeach the testimony of the victim and the fiancé to a degree, their testimony does not go to whether the victim was, in fact, assaulted. Under these circumstances, we cannot say that Clonts was prejudiced by the absence of this evidence.[16]

A third witness, Brian Elsberry, testified both at trial and at the hearing on Clonts' motion for new trial. During the motion hearing, Elsberry testified that he had been friends with both Clonts and the fiancé before the sexual assault. Evidently, Elsberry took Clonts' side, which angered the fiancé, who wrote a threatening letter to Elsberry. Elsberry also testified that he had witnessed an argument between the victim and her fiancé in which the fiancé had gotten "pretty abusive." Specifically, Elsberry testified that the fiancé "was standing behind [the victim] with his fist clinched . . . just yelling at her[,] and he was kicking my lawn chairs around." Again, this evidence does not go to whether the victim was, in fact, assaulted by Clonts. Thus, Clonts failed to establish how the absence prejudiced his defense.[17]

(b) Clonts contends that his trial attorney was ineffective for failing to object to numerous improper or inflammatory statements made by the prosecutor during closing argument. Pretermitting whether any single statement by the prosecutor exceeded the bounds of appropriate argument, we find no basis for reversal. "In the absence of testimony to the contrary, counsel's actions are presumed strategic. A decision by trial counsel not to object to a portion of clos-

---

[16] See *Letson v. State*, 236 Ga. App. 340, 341 (2) (512 SE2d 55) (1999) (in assessing the prejudicial effect of an attorney's failure to call a witness, the defendant bears the burden of showing how the failure affected the outcome of the case).

[17] See id.

ing argument may indeed fall within the ambit of trial strategy."[18] Although trial counsel testified at the hearing on Clonts' motion for new trial, Clonts' appellate counsel did not ask him a single question about his failure to object to any allegedly improper statements during closing argument. Accordingly, we assume that any such failure or refusal to object was strategic.[19]

*Judgment affirmed. Barnes, J., and Pope, Senior Appellate Judge, concur and concur specially.*

POPE, Senior Appellate Judge, concurring and concurring specially.

I concur fully in the result reached here and I write separately to urge the Bar to review and vigilantly implement the rules for preserving trial error for appellate review. In Division 2 of the majority, the opinion concludes that Clonts waived the alleged error here because his attorney failed to renew his motion for mistrial during closing argument after the trial court gave curative instructions in response to his objection. In Division 4 (b), the opinion addresses Clonts' argument that the prosecutor's closing argument violated the "golden rule." Again, the opinion notes that while Clonts' attorney objected to the statement and the trial court sustained the objection, the attorney did not ask for curative instructions nor move for a mistrial. Thus, the opinion concludes, the trial court's failure to sua sponte provide additional relief affords no basis for reversal.

It is well established that when a defendant objects during closing argument, he must then move for a mistrial or renew his objection in some fashion after the trial court gives curative instructions.

> Where a defendant objects and moves for a mistrial during the State's closing argument and the trial court denies the motion but takes some corrective action, if the defendant is dissatisfied with that action, he must renew the objection or motion; otherwise, the issue is waived.

(Citation, punctuation and footnote omitted.) *Stone v. State,* 257 Ga. App. 306, 309 (1) (570 SE2d 715) (2002). See also *Wells v. State,* 243 Ga. App. 629, 631 (3) (534 SE2d 106) (2000); see generally *Minnix v. State,* 162 Ga. App. 29, 31 (2) (290 SE2d 131) (1982); *Jackson v. State,* 248 Ga. 480, 483 (2) (284 SE2d 267) (1981); *Prophet v. State,* 158 Ga. App. 578 (2) (281 SE2d 321) (1981); *Burgess v. State,* 149 Ga. App. 630, 631 (1) (255 SE2d 100) (1979).

---

[18] (Citation and punctuation omitted.) *Holmes v. State,* 273 Ga. 644, 648 (5) (c) (543 SE2d 688) (2001).

[19] See id.

Despite the many cases in which this principle is stated, cases in which counsel fails to follow these rules, thus waiving any potential appeal of the argument, are common. Accordingly, I strongly urge members of the Bar to review the rules regarding preserving error for appellate review. And, because these mistakes are distressingly common, I think that the Bar should work toward ameliorating this recurrent situation.

I am authorized to state that Judge Barnes joins in this special concurrence.

DECIDED DECEMBER 23, 2002 —
RECONSIDERATION DENIED MARCH 11, 2003 —

*Garland, Samuel & Loeb, Donald F. Samuel, William C. Lea*, for appellant.

*James R. Osborne, District Attorney, Theo M. Sereebutra, Assistant District Attorney*, for appellee.