A06A0324. SIMON v. THE STATE.
(632 SE2d 723)

RUFFIN, Chief Judge.

Leroy Simon appeals his conviction for child molestation. He argues that the trial court erred in finding that his custodial statement was freely and voluntarily given, admitting e-mail messages that were not properly authenticated, and failing to grant a mistrial

---

when the prosecutor read from an exhibit during closing argument. We find no error and affirm.

Viewed in a light most favorable to the verdict,[1] the evidence shows that Simon had dated Ava Whiskey, the older sister of M. C. When M. C. was 13 years old, she considered Simon to be her friend and felt she could "talk to him about anything." One afternoon, while Simon was cleaning Ava's car and M. C. was sitting inside the car listening to the radio, Simon touched her breasts and leg. M. C. told him to stop, but Simon asked her if she wanted to play a game "where [M. C.] touch[es] [Simon] and he touches [her] back." M. C. refused and walked away. Later that evening, Simon asked M. C. to hold a flashlight for him while he cleaned out his car. While they were alone, Simon hugged M. C. from behind and put his fingers between her legs. He also asked her if she had engaged in sexual activity and with whom. M. C. told her niece about both incidents that same evening. She did not tell Ava because she feared it would jeopardize her sister's relationship with Simon.

M. C. also alleged that in August 2003, while she was still 13 years old, Simon had sexual intercourse with her at his home. She did not tell anyone about this incident until Terrance Whiskey, Ava's ex-husband, learned of suggestive e-mail correspondence between Simon and M. C. When confronted with this correspondence, M. C. admitted to the Whiskeys what Simon had done. She also recounted the incident for staff at Hughes Spalding Children's Hospital and the Georgia Center for Children, where she was interviewed on video-tape. After he was arrested, Simon made a statement to police in which he denied having a sexual relationship with M. C., but admitted that the e-mail correspondence was his.

Simon was charged with one count of statutory rape and four counts of child molestation. The jury found him not guilty of statutory rape and one count of child molestation for having sexual intercourse with M. C., but guilty of three counts of child molestation stemming from his placing his hand on the breast, vagina, and buttocks of M. C. Simon moved for a new trial, which the trial court denied.

1. Simon contends the trial court erred in failing to suppress his custodial statement because it was made after he invoked his right to counsel. Upon his arrest, Simon was interviewed by Detective Yi of the DeKalb County Police Department. Detective Yi read Simon his *Miranda*[2] rights, and Simon signed a waiver of those rights. Their conversation was audiotaped. When Detective Yi informed Simon of his right to an attorney, Simon asked if there was an attorney present.

---

[1] See *Johnson v. State*, 278 Ga. App. 66 (1) (628 SE2d 183) (2006).

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

Detective Yi responded, "no, there isn't one present . . . at this moment," but advised Simon that if he needed an attorney, one could be summoned. Simon replied, "that's funny" and paused, but signed the waiver and then gave a statement. Simon filed a motion to suppress his custodial statement, which the trial court denied after a *Jackson-Denno*[3] hearing.

We review a trial court's factual findings on the admissibility of a custodial statement under the clearly erroneous standard, considering the totality of the circumstances.[4] Law enforcement may not continue to question a suspect after the suspect

> has *clearly* asserted a right to have counsel present during custodial interrogation. But if the defendant "makes reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel," cessation of the questioning is not required.[5]

Simon asserts that, by asking if an attorney was present, he made an unambiguous request for counsel and that it is "obvious" he assumed he would be provided with counsel. We disagree. In *Braham v. State*,[6] we held that the question "can we get an attorney quickly" was not an unequivocal assertion of the right to counsel.[7] Likewise, Simon's question about the immediate availability of an attorney was not an unambiguous request for an attorney to be present.[8] Thus, the trial court did not err in admitting Simon's custodial statement because he never clearly requested an attorney.[9]

Simon also points to Detective Yi's failure to ask about his educational background, his ability to understand English, and when he had last slept, eaten, or used the restroom as evidence that his waiver of counsel was not voluntary. But Detective Yi testified that he interviewed Simon for only 35 to 40 minutes immediately after his

---

[3] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[4] See *Wallace v. State*, 267 Ga. App. 801, 808 (7) (600 SE2d 808) (2004).

[5] (Citations omitted; emphasis in original.) *Fitz v. State*, 275 Ga. 349, 353 (3) (b) (566 SE2d 668) (2002).

[6] 260 Ga. App. 533 (580 SE2d 256) (2003).

[7] (Punctuation omitted.) Id. at 535; see also *Carroll v. State*, 275 Ga. 160, 161 (2) (563 SE2d 125) (2002) (finding that defendant's inquiry about how he would get a lawyer was not an unambiguous request for counsel).

[8] See id.; *Moore v. State*, 263 Ga. App. 548, 550-551 (2) (588 SE2d 327) (2003) (custodial statement properly admitted where defendant signed waiver of rights form after asking if he would have to wait to get a lawyer, indicating to police that he would talk, and stating "I guess I'll get a lawyer, too.").

[9] See *Wright v. State*, 279 Ga. App. 155, 156 (1) (630 SE2d 656) (2006).

arrest, and Simon was able to understand him and respond appropriately to questions. And the trial court heard the audiotape of the interview. Under the totality of the circumstances, the trial court did not err in finding that Simon knowingly and voluntarily waived his right to counsel.[10]

2. Simon next argues that the trial court erred in admitting his e-mail correspondence with M. C. because the e-mails were not properly authenticated. We review the trial court's decision to admit evidence under an abuse of discretion standard.[11] Here, the trial court admitted a printout of a series of e-mails that had been forwarded from M. C.'s e-mail account to that of her niece and then given to the Whiskeys. M. C. testified that the printout was an accurate representation of the e-mail correspondence she had with Simon. Only one of the e-mails showed Simon's e-mail address; however, M. C. stated that she sent all her messages to and received responses from Simon's address. In the e-mails, she referred to Simon and he referred to himself as "Penguin," which was his nickname. Simon also admitted to both Ava Whiskey and Detective Yi that he had exchanged the e-mails with M. C.

While it is true, as Simon asserts, that e-mail offers unique opportunities for fabrication, it is held to the same standards of authentication as other similar evidence.[12] And documents may be authenticated by circumstantial evidence.[13] Where, as here, the witness testified that the document accurately reflects the exchange between the parties,[14] the witness communicated with the defendant at his known e-mail address,[15] the document itself contains indicia of reliability, such as use of the defendant's nickname and, in one instance, his e-mail address,[16] and the defendant acknowledges that the documents are authentic,[17] the trial court did not abuse its discretion in admitting the e-mails. We do not decide whether any of these instances, standing alone, would render the e-mails admissible;

---

[10] See *Nhek v. State*, 271 Ga. 245, 247 (2) (517 SE2d 521) (1999).

[11] See *Ford v. State*, 274 Ga. App. 695, 697-698 (1) (617 SE2d 262) (2005).

[12] See id. (transcript of real-time internet chat session admitted).

[13] See *Arevalo v. State*, 275 Ga. 392, 395 (5) (567 SE2d 303) (2002).

[14] See *Hudson v. State*, 273 Ga. 124, 127 (3) (538 SE2d 751) (2000); *Ford*, supra; *Wallace*, supra at 810 (9).

[15] See, e.g., *Brown v. State*, 266 Ga. 723, 725 (3) (470 SE2d 652) (1996) (witness had sufficient basis to testify that he had a telephone conversation with defendant when he dialed number given to him for defendant, asked for defendant, and spoke to man identifying himself as defendant).

[16] See *Williams v. State*, 280 Ga. 584, 587 (2) (630 SE2d 370) (2006); *Johnson v. State*, 273 Ga. 872, 873 (1) (548 SE2d 292) (2001).

[17] See *Lewis v. State*, 199 Ga. App. 97, 98 (2) (403 SE2d 814) (1991).

however, given the testimony of both M. C. and Simon, we cannot say that the admission of the e-mails was erroneous.

3. Simon asserts that the trial court should have granted a mistrial sua sponte when the prosecutor read inflammatory portions of an exhibit to the jury during closing argument. The standard of review for a trial court's refusal to grant a mistrial for improper argument by counsel is abuse of discretion.[18] The exhibit in question was a written statement given to police by Sharon Lee, who dated Simon after he was arrested in this case. Lee testified at trial that Simon admitted to her that he had e-mailed the victim, talked to the victim about sex, supplied her with condoms, and on one occasion had intercourse with her. Simon described the victim to Lee as "a real pretty girl" and "an attractive little girl." At trial, Lee identified her written statement, which was admitted for the record but not read to the jury.

In closing argument, the prosecutor argued to the jury:

[Y]ou know the facts that [Lee] writes in her statement, the things that [Simon] told her — and you know what the facts are because you heard all of them — the little girl — number one, the little girl was beautiful and attractive. They talked about each other's feelings sexually, and he was teaching her about boys. He encouraged the sexual conversations over the phone and online, [through] e-mails.

A bench conference was then held in which Simon objected to the prosecutor reading from Lee's statement. The trial court said it did not believe the prosecutor had argued any evidence that was not contained in Lee's testimony, but instructed the prosecutor not to read from the statement.

Simon contends that because the State's argument was read "verbatim" from Lee's statement, which was inadmissible hearsay, the trial court should have issued curative instructions or declared a mistrial. Assuming, without deciding, that the prosecutor was reading from Lee's written statement, the statement had been admitted into evidence and thus could be referred to in closing argument.[19] And the statement was cumulative of Lee's testimony about her conversation with Simon, to which Simon did not object.[20] Where the

---

[18] See *Gibbins v. State*, 229 Ga. App. 896, 900 (6) (495 SE2d 46) (1997).

[19] Lee's credibility was attacked on cross-examination; thus, her statement was properly admitted as a prior consistent statement. See *Hackett v. State*, 272 Ga. App. 196, 198-199 (2) (612 SE2d 54) (2005) (prior written statement to police admissible where witness's credibility is attacked and witness is available for cross-examination at trial).

[20] See *Stanford v. State*, 272 Ga. 267, 270 (4) (528 SE2d 246) (2000) (witness's testimony

challenged portion of the argument is not improper, the trial court did not err in failing to take action.[21]

Moreover, even if the prosecutor's reading from Lee's written statement had been improper, we would find no error. The trial court responded to Simon's objection by instructing the prosecutor not to read from the statement. Simon did not subsequently move for a mistrial or request curative instructions. "Under these circumstances, the trial court's failure to sua sponte provide additional relief provides no basis for reversal."[22]

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

### DECIDED JUNE 16, 2006.

*Maria Murcier-Ashley*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Barbara B. Conroy, Assistant District Attorney*, for appellee.

---

as to defendant's incriminating statement is admissible as an admission against the defendant's penal interest).

[21] See *Mitchell v. State,* 167 Ga. App. 306, 307 (2) (306 SE2d 322) (1983).

[22] *Clonts v. State,* 260 Ga. App. 143, 147 (4) (b) (579 SE2d 1) (2002); see *Vining v. State,* 162 Ga. App. 331, 332 (4) (290 SE2d 345) (1982).